**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| CARLTON F. GUNN, individually and on behalf of all others similarly situated, | No. 18-cv-03314 |
| Plaintiff, | CLASS ACTION |
| | JURY TRIAL DEMANDED |
| v. | |
| CONTINENTAL CASUALTY COMPANY, | |
| Defendant. | |

**<u>FIRST AMENDED CLASS ACTION COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

I.      NATURE OF THE CASE ..................................................................................1

II.     JURISDICTION ...............................................................................................3

III.    VENUE ............................................................................................................3

IV.     PARTIES .........................................................................................................4

V.      FACTUAL ALLEGATIONS ...........................................................................4

      A.      Continental promises long-term care coverage with uniform
            premium increases. ............................................................................4

      B.      Continental seeks and implements premium increases that vary
            within the same premium class. ........................................................11

      C.      Continental promises inflation protection, but misleads its insureds
            about the nature of that protection and future premium increases .....14

VI.     CLASS ACTION ALLEGATIONS ..................................................................20

FIRST CAUSE OF ACTION  (BREACH OF CONTRACT)....................................23

SECOND CAUSE OF ACTION  (BREACH OF THE IMPLIED COVENANT
      OF GOOD FAITH AND FAIR DEALING) ..................................................24

THIRD CAUSE OF ACTION  (VIOLATION OF THE DISTRICT OF
      COLUMBIA CONSUMER PROTECTION PROCEDURES ACT, D.C.
      CODE § 28-3901, *ET SEQ.*) ........................................................................26

FOURTH CAUSE OF ACTION  (FRAUD) ...........................................................28

FIFTH CAUSE OF ACTION  (FRAUDULENT CONCEALMENT)........................30

SIXTH CAUSE OF ACTION  (DECLARATORY AND INJUNCTIVE RELIEF) ...............32

PRAYER FOR RELIEF ........................................................................................33

JURY TRIAL DEMAND ......................................................................................34

## I.      NATURE OF THE CASE

1.      Plaintiff purchased a certificate for long-term care insurance offered to those covered by the Federal Judiciary's long-term care group policy. Long-term care insurance covers the costs of assistance with the activities of daily life due to disability or old age, costs not generally covered by health insurance. Insurers selling coverage tout the benefits of purchasing this coverage before reaching old age to guarantee the lowest possible premiums. When an insurance company markets and sells coverage for long-term care, it must honor promises made in the policy documents about future premium increases and not misrepresent how premiums will be increased.

2.      When marketing materials and the policy state that premiums will not be increased unless they are changed for everyone in the same age group, an insurance company must not increase premiums at different times, and in different amounts, for insureds within the same age group. Similarly, an insurer must not promise that it will change premiums only by age group or premium class when it knows that it will vary future premium increases state-to-state.

3.      When an insurer offers inflation protection in the form of an automatic annual benefit increase and charges more than double the standard premium for it, the insurer must disclose that the premium may still increase further even if inflation protection is purchased. A consumer paying more than double the normal premium for inflation protection would naturally understand and expect to be protected against future premium increases due to rising costs of care, changing interest rates, and other long-term inflation-related factors. Given this high risk of confusion, insurance regulations require insurers to disclose whether premiums might change even though inflation protection is purchased. If no disclosure is made, the policy is deemed to include a guaranteed level premium.

4.      Long-term care coverage buyers are buying long-term financial security, and they count on their insurer to accurately describe the process and the commitments it makes and to honor its promises made in touting the policy and in the contract language.

5.      Continental Casualty Company ("Continental") has broken these rules. While its marketing materials and policy promise that insureds will never be singled out for a rate increase, and that premiums will not change unless they change for all insureds in the same age category, Continental has done the opposite. Continental has imposed rate increases at different times and in different amounts from one state to the next. As a result, insureds within the same age group find themselves paying completely different premiums from one another, even though they are members of the same age group, premium class, and risk pool. Continental's decisions to seek and implement rate increases that vary from one state to the next blatantly violate its promises of uniform premium increases across the Class. Further, Continental knew its promises of uniform rate increases were false because it intended to seek different premium increases state to state. Plaintiff's rates will increase by 95% over three years, an increase far greater than rates charged insureds in other states.

6.      Continental also misstated the terms of inflation protection, failing to disclose that even if the insured purchases inflation protection in the form of an automatic benefit increase—a feature that can cost 2.5 times the standard premium—the insured could still face premium increases in the future. Indeed, Continental states in its marketing brochure that if the inflation protection option is purchased, "you will not have to worry about increasing your premium in the future." Even though a purchaser of inflation protection has a reasonable and enforceable expectation that premiums will not increase, Continental has nonetheless increased premiums on policies where inflation protection was purchased. Plaintiff's rates will increase by 95% over

three years, effectively doubling a premium that was *already more than doubled* to protect him against the rising costs of long-term care.

7.      Plaintiff brings this class action on behalf of all those insured under Continental's group long-term care insurance policies delivered in Washington, D.C., who were promised in policies, policy certificates, and/or marketing materials that their premiums would not be increased unless they were increased for all members of the same age category or premium class, or who purchased inflation protection in the form of an annual automatic benefit increase. Plaintiff seeks rescission of his insurance contracts and restoration of premiums paid or, in the alternative, declaratory and injunctive relief, disgorgement of ill-gotten gains, and compensatory, statutory, and punitive damages.

## II.    JURISDICTION

8.      This Court has jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest, and minimal diversity exists. Plaintiff is a citizen of California and Continental is a citizen of Illinois (where it has its principal place of business and is incorporated).

9.      This Court has personal jurisdiction over Continental because Continental has its principal place of business in Chicago, Illinois. This Court has personal jurisdiction over Plaintiff because Plaintiff consents to this Court's jurisdiction.

## III.    VENUE

10.      Venue is proper in this District under 28 U.S.C. § 1391 because this is the district in which Continental has its principal place of business and in which Continental engineered the marketing materials, insurance policies, and premium increases giving rise to the cause of action.

## IV.   PARTIES

11.   Plaintiff Carlton F. Gunn is a resident of the state of California.

12.   At all times pertinent, Plaintiff Gunn was insured under a long-term care policy issued and delivered to the Federal Judiciary Group Long Term Care Insurance Trust located in Washington, D.C. When he purchased his long-term care policy certificate from Continental, Plaintiff Gunn was a resident of the State of Washington.

13.   Continental is an Illinois corporation with its principal place of business in Chicago, Illinois.

## V.   FACTUAL ALLEGATIONS

**A.   Continental promises long-term care coverage with uniform premium increases.**

14.   Long-Term Care (LTC) insurance pays for a variety of services for people who are unable to care for themselves. Long-term care services may include assistance in a home, adult daycare center, an assisted living facility, or nursing home. Long-term care insurance is different from long-term disability insurance, which provides you with income protection in the event that you become disabled. Premiums for long-term care coverage are generally set at the same level for a given age category. Purchasers of the coverage are assured that by purchasing long-term care coverage at an early age, they can secure a more favorable premium than they could otherwise obtain over the coming years. Long-term care coverage promises the peace of mind that by paying a fair and reasonable premium in the long run, insureds will be protected against the significant expenses of assisted living and other long-term care if and when they need it.

15.   The experience of the long-term care insurance industry has not matched these expectations. Insureds lured in by the promise of affordable premiums early in life have faced massive premium increases, with rates sometimes even doubling in a few years. Rather than obtaining peace of mind, these insureds suffer with the uncertainty of future premium increases,

the risk of long-term care expenses that could arise, and the unavailability of affordable coverage alternatives now that they have reached a more advanced age.

16.     These drastic increases are no accident. Insurers disappointed in the performance of their long-term care risk pools have sought to take out their losses on their insureds. And as the facts of this case demonstrate, insurers are determined to protect their bottom line, regardless of their promises or the impact on an aging population that relied upon Continental's promises of financial stability.

17.     Continental is a publicly held financial corporation that issues long-term care insurance policies nationwide.

18.     Continental issued and delivered group long-term care policy number 01-A-9819 ("the Policy") to the Federal Judiciary Group Long Term Care Insurance Trust, located in Washington, D.C., with a policy effective date of December 1, 1999. Delivery of an insurance policy to the policyholder occurs when the underwriting process is complete and the actual policy is given to the policyholder, confirming coverage.

19.     Negotiations before issuance of the Policy were conducted between Continental and the Federal Judiciary Group Long Term Care Insurance Trust, located in Washington, D.C.

20.     Plaintiff Gunn purchased a certificate of coverage under the Policy with a coverage effective date of January 1, 2000. Mr. Gunn was covered by the Federal Judiciary Policy because at the time he bought the policy he was an attorney in the Federal Public Defender's Office in Tacoma, Washington.

21.     Continental underwrote and established the Policy form, premium rates, and actuarial risk pool for employees of the federal judiciary nationwide, not limited or classified by their various locations in specific states.

22.     Among other benefits, the Policy provided a caregiver benefit not to exceed $1,050 per year, a daily nursing home benefit amount of $140, and inflation protection in the form of a "Lifetime Compounded Automatic Benefit Increase" of 5% per year.

23.     Under the heading **PREMIUM**, the Policy certificate states:

> We cannot change the Insured's premiums because of age or health.  We can, however, change the Insured's premiums based on his or her premium class, but only if We change the premiums for all other Insureds in the same premium class.

24.     The same language appears under the heading **PREMIUM** in the group policy.

25.     According to this language, Continental promises its insureds that any premium increases will be made not just for the insured or a group of insureds within a premium class, but for "all other insureds in the same premium class."

26.     The Policy contains no additional definition of "premium class." According to the plain meaning of the Policy and the reasonable understanding and expectations of an insured, the "premium class" refers to the nationwide pool of insureds under the group insurance plan within a given age category. As shown below, the rate schedules distributed to purchasers of the coverage showed rates that varied by age and benefit level only, and not by residence of the insured or place of purchase.

27.     Similarly, according to the plain meaning of the Policy and the reasonable understanding and expectations of an insured, the quoted Policy certificate language means that if the premium changes for one insured, the same change will apply to the premiums of all members of the premium class. This language assures consumers that their rates will at least remain stable relative to the rates paid by other members of the premium class—which depend only upon age or benefit level, as shown by the rate schedules—so they will not be required to bear a disproportionate cost of coverage for the premium class.

28.     Continental issued similar long-term care insurance policies and policy certificates using the same or similar language to insureds throughout the country under policies issued to long-term care group policyholders in Washington D.C.

29.     When it marketed the Policy to Plaintiff, Continental provided a brochure entitled, "Group Long-Term Care Program: A benefit for you and your extended family."

30.     Plaintiff reviewed and relied upon this brochure as well as other marketing and policy materials at the time that he purchased long-term care coverage under the Federal Judiciary policy.

31.     Continental distributed similar brochures containing the same or similar marketing language to purchasers of long-term care insurance throughout the country under policies issued to long-term care group policyholders in Washington D.C.

32.     Within the brochure, Continental assured Plaintiff and class members that the Policy would provide long-term stability and that Plaintiff and other class members would not be subject to disparate or discriminatory rate increases: "The younger you are when your coverage begins, the lower your premiums will be for the duration of your participation in the plan. As the chart indicates below, a 40 year-old man who enrolls now will pay the same rate 20 years from now as a 40 year-old who just enrolled in the plan. So it makes sense to buy coverage now when you can set your premiums at the lowest possible rate."

33.     The brochure illustrated the supposed value of early purchase with this chart:

| $140/day benefit | | |
|---|---|---|
| Age Entering Plan | Total Years of Premiums Paid (to age 75) | Total Premiums Paid |
| 40 | 35 | $ 8,723 |
| 59 | 16 | $15,967 |

34.     After the chart, the brochure contained this statement:

> Premiums may change. But for premiums
> to change, CNA would have to change premi-
> ums for everyone in your age category who has
> the kind of coverage plan that you do.

35.     Like the language in the Policy certificate, this language in the brochure would lead a reasonable purchaser of long-term care insurance to believe that if premiums increase, they are being increased by the same amount for everyone who bought coverage at the same age in the nationwide insurance pool. The language suggests that rates will not change unless they change for "everyone in your age category who has the kind of coverage plan that you do"—not by residence of the insured or place of purchase. A reasonable purchaser of long-term care insurance would naturally understand and deem it highly material that he or she would not be forced to bear a disproportionate share of the overall premium expense for the risk pool in the form of a premium increase that affects only a subset of the risk pool.

36.     The term "age category" is not defined elsewhere in the brochure or policy. According to the plain language of this term and the reasonable expectations and understanding of an insured, "age category" refers to all insureds who bought coverage at the same age in the nationwide insurance pool.

37.     The brochure contains tables of monthly and biweekly premium rates as follows:

20

# Bi-weekly rates

The premiums shown are for payroll deduction and are bi-weekly amounts.

Premiums are based on the individual's age on their effective date of coverage.

| AGE | $95 Benefit | $140 Benefit | $185 Benefit | $250 Benefit |
|---|---|---|---|---|
| <25 | 2.75 | 4.05 | 5.36 | 7.24 |
| 25 | 3.14 | 4.63 | 6.12 | 8.27 |
| 26 | 3.19 | 4.70 | 6.21 | 8.40 |
| 27 | 3.27 | 4.82 | 6.37 | 8.61 |
| 28 | 3.39 | 4.98 | 6.59 | 8.91 |
| 29 | 3.48 | 5.14 | 6.79 | 9.17 |
| 30 | 3.63 | 5.35 | 7.07 | 9.54 |
| 31 | 3.76 | 5.54 | 7.32 | 9.89 |
| 32 | 3.93 | 5.79 | 7.65 | 10.35 |
| 33 | 4.15 | 6.12 | 8.08 | 10.92 |
| 34 | 4.41 | 6.50 | 8.58 | 11.60 |
| 35 | 4.69 | 6.92 | 9.15 | 12.36 |
| 36 | 5.02 | 7.40 | 9.78 | 13.21 |
| 37 | 5.36 | 7.90 | 10.44 | 14.10 |
| 38 | 5.69 | 8.40 | 11.10 | 15.00 |
| 39 | 6.07 | 8.95 | 11.82 | 15.97 |
| 40 | 6.51 | 9.59 | 12.67 | 17.13 |
| 41 | 6.92 | 10.20 | 13.48 | 18.21 |
| 42 | 7.34 | 10.83 | 14.30 | 19.33 |
| 43 | 7.77 | 11.45 | 15.13 | 20.45 |
| 44 | 8.21 | 12.10 | 15.98 | 21.60 |
| 45 | 8.75 | 12.89 | 17.03 | 23.02 |
| 46 | 9.26 | 13.66 | 18.05 | 24.39 |
| 47 | 9.86 | 14.53 | 19.20 | 25.95 |
| 48 | 10.49 | 15.46 | 20.43 | 27.60 |
| 49 | 11.14 | 16.42 | 21.70 | 29.31 |
| 50 | 11.98 | 17.65 | 23.34 | 31.54 |
| 51 | 12.84 | 18.92 | 25.01 | 33.79 |
| 52 | 13.88 | 20.46 | 27.03 | 36.53 |
| 53 | 15.09 | 22.24 | 29.39 | 39.72 |
| 54 | 16.46 | 24.27 | 32.06 | 43.33 |
| 55 | 18.13 | 26.72 | 35.31 | 47.71 |
| 56 | 19.80 | 29.18 | 38.56 | 52.12 |
| 57 | 21.66 | 31.91 | 42.17 | 56.99 |
| 58 | 23.76 | 35.01 | 46.26 | 62.52 |
| 59 | 26.04 | 38.38 | 50.72 | 68.53 |
| 60 | 28.74 | 42.36 | 55.98 | 75.65 |
| 61 | 31.29 | 46.11 | 60.93 | 82.33 |
| 62 | 33.80 | 49.81 | 65.82 | 88.94 |
| 63 | 36.13 | 53.25 | 70.37 | 95.10 |
| 64 | 38.32 | 56.48 | 74.63 | 100.85 |
| 65 | 41.01 | 60.44 | 79.86 | 107.92 |
| 66 | 43.77 | 64.49 | 85.23 | 115.17 |
| 67 | 47.32 | 69.73 | 92.15 | 124.53 |
| 68 | 51.42 | 75.77 | 100.13 | 135.31 |
| 69 | 55.88 | 82.35 | 108.82 | 147.04 |
| 70 | 60.97 | 89.86 | 118.74 | 160.45 |
| 71 | 67.00 | 98.74 | 130.47 | 176.31 |
| 72 | 74.25 | 109.42 | 144.59 | 195.39 |
| 73 | 82.80 | 122.03 | 161.24 | 217.90 |
| 74 | 92.46 | 136.26 | 180.06 | 243.32 |
| 75 | 103.09 | 151.93 | 200.77 | 271.31 |
| 76 | 114.68 | 169.01 | 223.33 | 301.80 |
| 77 | 126.87 | 186.97 | 247.07 | 333.87 |
| 78 | 139.68 | 205.84 | 272.01 | 367.57 |
| 79 | 151.89 | 223.84 | 295.79 | 399.72 |
| 80 | 166.11 | 244.80 | 323.48 | 437.14 |
| 81 | 179.72 | 264.85 | 349.98 | 472.95 |
| 82 | 195.80 | 288.55 | 381.29 | 515.26 |
| 83 | 213.38 | 314.46 | 415.54 | 561.53 |
| 84 | 232.40 | 342.48 | 452.56 | 611.58 |
| 85 | 249.97 | 368.38 | 486.79 | 657.81 |
| 86 | 269.56 | 397.25 | 524.94 | 709.37 |
| 87 | 288.48 | 425.13 | 561.77 | 759.15 |
| 88 | 303.99 | 447.99 | 591.98 | 799.98 |
| 89 | 318.91 | 469.98 | 621.04 | 839.25 |
| 90 | 336.34 | 495.65 | 654.96 | 885.08 |

21

# Monthly rates

The premiums shown are monthly amounts for payroll deduction and pre-authorized checking.

Premiums are based on the individual's age on their effective date of coverage.

Quarterly premiums for direct billing are determined by multiplying monthly premiums by three.

Annualized premiums for comparison to other policies can be determined by multiplying the monthly rates by twelve.

For semi-annual and annual premiums, please call Customer Service.

| AGE | $95 Benefit | $140 Benefit | $185 Benefit | $250 Benefit |
|-----|-------------|--------------|--------------|--------------|
| <25 | 5.96 | 8.77 | 11.60 | 15.68 |
| 25 | 6.81 | 10.03 | 13.26 | 17.91 |
| 26 | 6.91 | 10.19 | 13.46 | 18.19 |
| 27 | 7.08 | 10.44 | 13.80 | 18.65 |
| 28 | 7.33 | 10.81 | 14.28 | 19.30 |
| 29 | 7.55 | 11.13 | 14.70 | 19.86 |
| 30 | 7.85 | 11.58 | 15.30 | 20.66 |
| 31 | 8.14 | 12.00 | 15.86 | 21.44 |
| 32 | 8.52 | 12.55 | 16.59 | 22.42 |
| 33 | 9.00 | 13.25 | 17.51 | 23.66 |
| 34 | 9.55 | 14.07 | 18.60 | 25.13 |
| 35 | 10.18 | 15.00 | 19.82 | 26.78 |
| 36 | 10.88 | 16.03 | 21.19 | 28.63 |
| 37 | 11.62 | 17.12 | 22.62 | 30.56 |
| 38 | 12.35 | 18.19 | 24.04 | 32.49 |
| 39 | 13.15 | 19.38 | 25.61 | 34.61 |
| 40 | 14.09 | 20.77 | 27.46 | 37.09 |
| 41 | 15.00 | 22.09 | 29.19 | 39.45 |
| 42 | 15.92 | 23.45 | 30.99 | 41.88 |
| 43 | 16.84 | 24.81 | 32.78 | 44.30 |
| 44 | 17.79 | 26.22 | 34.64 | 46.81 |
| 45 | 18.95 | 27.93 | 36.91 | 49.87 |
| 46 | 20.08 | 29.60 | 39.11 | 52.85 |
| 47 | 21.36 | 31.49 | 41.61 | 56.22 |
| 48 | 22.72 | 33.49 | 44.26 | 59.81 |
| 49 | 24.13 | 35.57 | 47.00 | 63.51 |
| 50 | 25.96 | 38.27 | 50.56 | 68.32 |
| 51 | 27.82 | 41.00 | 54.17 | 73.21 |
| 52 | 30.08 | 44.32 | 58.56 | 79.14 |
| 53 | 32.70 | 48.19 | 63.68 | 86.05 |
| 54 | 35.68 | 52.58 | 69.48 | 93.89 |
| 55 | 39.28 | 57.89 | 76.50 | 103.37 |
| 56 | 42.91 | 63.24 | 83.56 | 112.92 |
| 57 | 46.92 | 69.15 | 91.37 | 123.48 |
| 58 | 51.48 | 75.86 | 100.23 | 135.46 |
| 59 | 56.43 | 83.16 | 109.89 | 148.49 |
| 60 | 62.28 | 91.79 | 121.29 | 163.90 |
| 61 | 67.79 | 99.90 | 132.01 | 178.39 |
| 62 | 73.23 | 107.92 | 142.61 | 192.72 |
| 63 | 78.30 | 115.38 | 152.48 | 206.04 |
| 64 | 83.03 | 122.36 | 161.69 | 218.51 |
| 65 | 88.86 | 130.95 | 173.04 | 233.84 |
| 66 | 94.83 | 139.75 | 184.67 | 249.54 |
| 67 | 102.53 | 151.09 | 199.66 | 269.81 |
| 68 | 111.41 | 164.18 | 216.95 | 293.17 |
| 69 | 121.07 | 178.42 | 235.77 | 318.60 |
| 70 | 132.11 | 194.69 | 257.27 | 347.65 |
| 71 | 145.17 | 213.94 | 282.70 | 382.02 |
| 72 | 160.87 | 237.07 | 313.27 | 423.34 |
| 73 | 179.40 | 264.38 | 349.36 | 472.11 |
| 74 | 200.33 | 295.23 | 390.12 | 527.19 |
| 75 | 223.38 | 329.19 | 435.00 | 587.84 |
| 76 | 248.49 | 366.18 | 483.89 | 653.89 |
| 77 | 274.89 | 405.10 | 535.32 | 723.39 |
| 78 | 302.64 | 445.99 | 589.34 | 796.41 |
| 79 | 329.10 | 484.98 | 640.88 | 866.04 |
| 80 | 359.91 | 530.40 | 700.88 | 947.14 |
| 81 | 389.40 | 573.85 | 758.29 | 1,024.72 |
| 82 | 424.22 | 625.18 | 826.13 | 1,116.39 |
| 83 | 462.33 | 681.32 | 900.33 | 1,216.65 |
| 84 | 503.53 | 742.04 | 980.55 | 1,325.08 |
| 85 | 541.60 | 798.15 | 1,054.69 | 1,425.26 |
| 86 | 584.05 | 860.71 | 1,137.36 | 1,536.97 |
| 87 | 625.04 | 921.10 | 1,217.17 | 1,644.83 |
| 88 | 658.65 | 970.65 | 1,282.64 | 1,733.29 |
| 89 | 690.98 | 1,018.29 | 1,345.59 | 1,818.37 |
| 90 | 728.72 | 1,073.90 | 1,419.09 | 1,917.69 |

38.     These tables define premium classes by age and benefit level. A reasonable insured would understand from the brochure that these rates govern policies for all insureds in a given premium class or age category nationwide, without any differences based upon state of residency. A reasonable insured would further understand that he or she was part of a nationwide premium class.

**B.     Continental seeks and implements premium increases that vary within the same premium class.**

39.     Originally, the Policy carried a biweekly premium of $30.64, or annual premium of $737.52.

40.     Plaintiff Gunn received a letter from Continental dated November 9, 2017, stating that his premium would increase by 25% on the first of the year. The letter stated that the new annual premium payment after the increase would be $921.90.

41.     The letter further stated that Continental intended to implement a 25% premium increase for the following two years, amounting to a cumulative premium increase of 95.3%.

42.     These projected increases nearly double the annual premium that Gunn had been paying to $1,440.38.

43.     The letter further stated that Gunn had three options after the premium increase: (1) continue the current coverage by paying the new premium; (2) reduce coverage to help "minimize the effect" of the premium increase; or (3) execute a non-forfeiture benefit, discontinuing premium payments and accepting a reduced benefit under the certificate. None of these options are acceptable to Mr. Gunn, or would be to class members who have been paying premiums. As Senators Carlin and Mikulski wrote about their being "flabbergasted" to learn of a similar rate hike by John Hancock for a policy covering federal employees:

> Many [current and retired federal workers] are on fixed incomes or coming off a three-year pay freeze and substandard pay raises since then. They are being asked to pay an additional $111 per month, on average. This is unacceptable, and so are the

> alternatives: a reduction in coverage to keep premiums at their
> current level, taking a 'contingent benefit upon lapse' for those
> who are eligible, or dropping coverage altogether.

44.     In the 2017 letter, seventeen years after the sale of the policy, Continental

discloses for the first time that the premium increase is not uniform for everyone in the same age

category or premium class.

> 6. **Will the premium rate increase be effective for everyone?**
> Since Continental Casualty Company (CCC) must receive approval or authorization from
> certain states prior to implementing an increase, it is possible that these states will not
> approve or authorize the same percentage increase or authorize an increase at the same time.
> It is also possible some states may deny CCC's request for an increase, or require it be
> reduced or spread over multiple years. In addition, impacted certificate holders have different
> premium due dates and have different premium billing mechanisms. Premium increases will
> be staggered in accordance with the timing of regulatory approvals or authorizations and
> method of premium payment.

45.     As stated in the letter, the premium increases vary greatly from state to state. For

example, for insureds in the same premium class and risk pool under the same policy form who

reside in Washington, D.C., Continental has sought only two 10% premium increases. A CNA

representative has advised Gunn that the smaller increases allowed by the D.C. insurance

commission apply to policyholders in most other states, so those policyholders have been

subjected to no more than two 10% increases.

46.      Plaintiff and the Class have been subjected to disparate increases in the cost of

their long-term care premiums depending upon the state that they live in. In 2017, Continental

stated in publicly filed documents that the average annual premium was $931 nationwide and

$1026 in Washington, D.C. for the policy forms at issue. While the last 10% increase sought in

Washington D.C. would bring the local average to $1,129, the 95% increase sought in

Washington and other states would bring the nationwide average premium to $1,820.11.

47.     These disparate increases violate the terms of the Policy because Continental has

not met its duty to increase premiums "based on [the insured's] premium class."

48.     These disparate increases violate the terms of the Policy because Continental has not met its duty to increase premiums "for all other insureds in the same premium class." They also violate the representation that the only increases that could occur would be where they apply to all other policyholders with the same type of coverage and of the same age.

49.     Further, these disparate increases render Continental's marketing brochure and other marketing materials unfair, deceptive, and misleading because Continental has not applied the same premium increase to "everyone in your age category who has the same kind of coverage plan."

50.     As a result, insureds living in different states bear a disproportionate cost of long-term care coverage, in effect subsidizing the premiums and risks of other insureds in contravention of Continental's policy and marketing materials. Further, because insurance regulations generally limit insurers to collecting administrative costs and a reasonable profit, the disparate premium increases introduce a systemic imbalance under which Continental will be forced to recoup expenses associated with some insureds at the expense of others, even if future premiums facially comply with any applicable regulatory requirements and the Policy.

51.     As an established insurance company with significant experience in the industry, Continental knew at the time that it issued the Policy and distributed its marketing documents, including the brochure, that premium increases would be sought state-by-state and not for the entire premium class or age category. Yet Continental misstated the basis upon which future premium increases would occur and concealed its intention to vary the timing and amount of premium increases for subsets of each premium class or age category, state by state.

**C.**     **Continental promises inflation protection, but misleads its insureds about the nature of that protection and future premium increases**

52.     Like many other insureds, Gunn purchased an expensive inflation rider for protection against the rising costs of long-term care. But instead of protecting him, this rider left him exposed as Continental almost doubled its premiums to keep pace with rising healthcare costs.

53.     Like life insurance, long-term care insurance protects individuals against risks that span decades into the future. A buyer of long-term care insurance would naturally be concerned about the possible impact of inflation on the benefits available under the policy, as well as the possible impact of inflation on the cost of coverage. The relationship between the cost of coverage, the policy benefits, and the possibility of inflation is highly material to a reasonable consumer.

54.     For this reason, most state insurance regulations require that long-term care insurance companies make an offer of inflation protection to every prospective purchaser of long-term care insurance.

55.     For example, in the District of Columbia (where Gunn's policy was delivered), regulations state, "No insurer may offer a long-term care insurance policy unless the insurer also offers to the policyholder in addition to any other inflation protection the option to purchase a policy that provides for benefit levels to increase with benefit maximums or reasonable durations which are meaningful to account for reasonably anticipated increases in the costs of long-term care services covered by the policy." 26-A D.C. Mun. Regs. § 2624.1.

56.     The regulations require the insurer to offer options including an automatic annual increase of benefit levels compounded annual at a rate of at least 5%. 26-A D.C. Mun. Regs. § 2624.1(a).

57.     Premiums charged for an inflation-protected policy are generally much higher than premiums charged for an unprotected policy. In Gunn's case, Continental's base rate

schedule for long-term care insurance for Gunn's age group at the time of his purchase listed a biweekly premium of around $12. But because Gunn purchased inflation protection, his insurance certificate lists the premium at more than twice that amount, over $30.

58.     Consumers purchasing inflation protection at such a high premium—here, 250% of the standard premium—reasonably expect that they are purchasing long-term stability in order to avoid the need for future premium increases, purchases of additional coverage, or out-of-pocket costs for services in the future as the costs of long-term care rise. An automatic increase of benefits year-to-year is cold comfort to an insured if premiums are subject to rise along with the costs of care.

59.     Put differently, a reasonable insured would think twice about paying more than double the base premium for an increased daily benefit accruing slowly over a period of years if the insured will be subject to additional premium increases to cover the cost of inflation that was supposed to be rolled into the higher original premium. Raising premiums to cover the rising costs of long-term care is the exact opposite of inflation protection.

60.     In short, premium stability is of the utmost importance to any purchaser of inflation protection on long-term care insurance.

61.     Because of the obvious potential for confusion or deception over the nature of inflation protection, regulations require clear and specific disclosures regarding possible premium increases on inflation-protected policies.

62.     The District of Columbia has adopted the model regulation that applies in many states, providing as follows:

An insurer shall include the following information in or with the outline of coverage:

(a)     A graphic comparison of the benefit levels of a policy that increases benefits over the policy period with a policy that does not increase benefits. The graphic comparison shall show benefit levels over at least a twenty (20) year period; and

(b)     Expected premium increases or additional premiums to pay for automatic or optional benefit increases.

26-A D.C. Mun. Regs. § 2624.4

63.     Further, the regulation requires assurances and disclosures of stable premiums with the offer of inflation protection: "An offer of inflation protection that provides for automatic benefit increases **shall include an offer of a premium that the insurer expects to remain constant.**" 26-A D.C. Mun. Regs. § 2624.7.

64.     Additionally, the regulation requires the insurer to "**disclose in a conspicuous manner that the premium may change in the future unless the premium is guaranteed to remain constant.**" 26-A D.C. Mun. Regs. § 2624.7.

65.     Gunn's long-term care policy states, "If a provision conflicts with the statutes of the jurisdiction in which the Policy was delivered or issued, it is automatically changed to meet the minimum requirements of the statute." Continental's parent company CNA Financial admits that this provision "requires adherence to legal requirements such as state rate regulations." (Doc. # 21 at 26; *see also* doc. # 21 at 4, 9, 12 n.8.) Thus, when an insurer fails to disclose in a conspicuous manner that the increased premium paid for an automatic benefit increase may change in the future as required by 26-A D.C. Mun. Regs. § 2624.7, the policy is deemed to guarantee that the premium remains constant to meet the requirements of the regulation.

66.     Continental failed to disclose in a conspicuous manner that the increased premium paid for an automatic benefit increase may change in the future. Indeed, Continental's marketing materials state the opposite.

67.     The Continental brochure contained a prominent section entitled, "What about inflation?" This section explained two primary options available to insureds to protect against inflation risk.

68.     The first inflation-protection option is the Guaranteed Benefit Increase feature, which is included with the base-level policy. This feature offers insureds "the opportunity to purchase additional amounts of daily benefit for nursing home care." The Continental brochure specifies that for this base-level option, a purchase of additional coverage will result in a higher premium:

> Once you accept the offer to increase your daily nursing home benefit, all other benefits within the plan are increased proportionately. The premium for the additional amount of daily nursing home benefit will be based on the age you are when you accept the offer and simply added to your premium for the amount of daily nursing home benefit you elect now.

69.     As an alternative to this pay-as-you-go inflation protection, Continental offered the Lifetime Automatic Benefit Increase benefit. This offer requires a much higher premium to start out, but promises long-term protection in the form of an automatic annual increase of the maximum daily benefit by 5%. The Continental brochure states as follows:

> As an alternative to the Guaranteed Benefit Increase benefit, you can select the optional Lifetime Compound Automatic Benefit Increase benefit. While this will cost more initially, it will automatically increase the daily benefit for nursing home care that you select now by 5% annually on a compounded basis. This means you will not need to worry about increasing your premium in the future or about tracking offers of additional coverage. For more information about the Lifetime Compounded Automatic Benefit Increase, please call Customer Service, toll-free, at: 1-877-512-4007.

70.     Nowhere in this offer of an automatic benefit increase does Continental state, let alone conspicuously state, that premiums may increase even after this form of inflation protection is purchased. To the contrary, Continental states that upon purchasing the automatic benefit increase, "you will not need to worry about increasing your premium in the future or about tracking offers of additional coverage."

71.     Continental's insurance application form requires the applicant to accept or reject the offer of the Lifetime Compounded Automatic Benefit Increase and requires the applicant to attest that he or she "reviewed the outline of coverage" before rejecting the benefit.

72.     Regarding the Lifetime Compounded Automatic Benefit Increase, Continental's Outline of Coverage states, "On each anniversary of this benefit's effective date, all benefit amounts in effect on that anniversary and the remaining Lifetime Maximum Benefit will increase by 5%." Nowhere in the outline of coverage does Continental state, let alone conspicuously state, that premiums may increase even after inflation protection is purchased.

73.     Regarding the Lifetime Compounded Automatic Benefit Increase, the master policy and certificate state, "On each anniversary of this benefit's effective date, all benefit amounts in effect on that anniversary and the remaining Lifetime Maximum Benefit will increase by 5%." Nowhere in the master policy or certificate does Continental state, let alone conspicuously state, that premiums may increase even after inflation protection is purchased.

74.     As noted above, Gunn purchased inflation protection for his Policy in the form of the Lifetime Compounded Automatic Benefit Increase. This inflation-protection benefit increases the maximum daily benefit by 5% per year. The selection of this benefit also resulted in Gunn agreeing to pay a premium at 250% the level he otherwise would have paid.

75.     Gunn and any other consumer would reasonably understand and expect from the language in the brochure, outline of coverage, and policy that future increases in premiums and purchases of additional coverage would not take place if the automatic benefit increase option for inflation protection is purchased. Gunn and any other consumer would reasonably understand and expect that by paying more than double for inflation protection in the form of benefit increases, premiums would be expected to remain stable even if the costs of long-term care increased in future years.

76.     Instead of charging a level premium to purchasers of the automatic benefit increase feature, Continental has raised their premiums by astronomical amounts, in Gunn's case nearly doubling the original premium for the policy. Even though Gunn already agreed to pay more than twice the base premium for the policy for inflation protection, Continental has seen fit to double premiums again many years after the policy was purchased.

77.     In more concrete terms, Gunn paid more than double for coverage that would increase by 5% each year. Seventeen years after the purchase, now that the benefit level has doubled, Continental has doubled the cost of coverage again. By increasing premiums in this way, Continental protects itself from inflation, not Gunn.

78.     As Continental explained in its recent application for a premium increase in Washington State, its assumptions for current actuarial projections "are substantially different from those used in the original product pricing. . . . The original pricing assumptions for claim costs, voluntary termination rates, mortality, and interest varied over time." In other words, Continental falsified or erred in its projections of long-term care costs and interest rates.

79.     Nonetheless, Continental now seeks to inflict the cost of its false projections upon its insureds, even those insureds who thought they were paying substantially more in order to

protect themselves from upward trends in the cost of long-term care. Continental's marketing materials, outline of coverage, and policy are materially misleading because they fail to disclose to the insured that the automatic benefit increase affords no protection against future premium increases. Moreover, Continental has failed to disclose in the offer of automatic benefit increases that premiums levels are not guaranteed. Therefore, a contractually guaranteed premium arises in the policy by operation of law.

80. Continental has breached the policy by seeking to raise premiums on policies where the automatic benefit increase option was purchased. Continental has further committed fraud and violated consumer deception statutes by misrepresenting the nature of inflation protection and failing to disclose that such protection did not protect insureds against astronomical premium increases in the future.

## VI.    CLASS ACTION ALLEGATIONS

81. This action is brought and may properly be maintained as a class action, as it satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Federal Rule of Civil Procedure 23. Plaintiff brings all claims herein individually and as a class action under Federal Rule of Civil Procedure 23.

82. The class consists of two subclasses as follows:

> (1) All individuals who purchased or are insured under a Continental Casualty Company policy for long-term care coverage delivered in Washington, D.C., whose policy either states or was marketed using material that states that premiums will not increase unless they also increase for all other insureds or all other insureds in a premium class, age category, or other specified category.

> (2) All individuals who purchased or are insured under a Continental Casualty Company policy for long-term care coverage delivered in Washington, D.C., whose policy includes an automatic annual benefit increase.

83. Excluded from the Class is the federal judge assigned to this case, if he or she has such a policy.

84. While the exact number of members cannot be determined, the Class consists of at least thousands of persons nationwide. The members of the Class are therefore so numerous that joinder of all members is impracticable. The exact number of class members can readily be determined by documents produced by Continental.

85. There are questions of fact and law common to the Class, including:

    i.    Whether Continental increased long-term care premiums state by state;

    ii.    Whether Continental increased premiums on policies with an automatic annual benefit increase feature;

    iii.    Whether Continental misrepresented the terms of its long-term care policies;

    iv.    Whether Continental misrepresented its intent to raise premiums state by state;

    v.    Whether Continental misrepresented its intent to raise premiums on policies with an automatic annual benefit increase feature;

    vi.    Whether, through each of the foregoing practices, Continental breached its contracts with its insureds;

    vii.    Whether, through each of the foregoing practices, Continental violated the District of Columbia Consumer Protection Procedures Act (D.C. Code § 28-3901 *et seq.*);

    viii.    Whether, through each of the foregoing practices, Continental fraudulently misrepresented its long-term care coverage while marketing and selling it;

    ix.    Whether, through each of the foregoing practices, Continental fraudulently concealed facts in the marketing and sale of long-term care coverage;

    x.    Whether Continental's actions were unreasonable, frivolous, or unfounded;

    xi.    Whether Continental's actions were reckless, malicious, or willful;

    xii.    Whether Plaintiff and the Class are entitled to rescission;

xiii.    Whether Plaintiff and the Class may have their premiums returned;

xiv.    Whether Plaintiff and the Class are entitled to disgorgement of ill-gotten gains;

xv.    Whether Plaintiff and the Class are entitled to an award of compensatory damages;

xvi.    Whether Plaintiff and the Class are entitled to an award of statutory damages;

xvii.    Whether Plaintiff and the Class are entitled to an award of punitive damages;

xviii.    Whether Plaintiff and the Class are entitled to an award of attorney's fees;

xix.    Whether Plaintiff and the Class are entitled to declaratory and injunctive relief.

86.    Plaintiff has the same interests in this matter as all other members of the Class, and his claim is typical of all members of the Class. Plaintiff's claims are coincident with and not antagonistic to those of other class members that Plaintiff seeks to represent. Plaintiff and all class members have sustained damages arising out of Continental's common course of conduct as outlined herein. The damages of each class member were caused by Continental's wrongful conduct.

87.    Plaintiff is committed to pursuing this action and has retained competent class counsel experienced in insurance litigation and class action litigation. The Plaintiff will fairly and adequately represent the interests of the class members.

88.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(2) because Continental's actions generally apply to the Class as a whole, and Plaintiff seeks, *inter alia*, equitable remedies regarding the Class as a whole.

89.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because the common questions of law and fact enumerated above predominate over questions

affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Plaintiff's counsel, highly experienced in insurance litigation and class action litigation, foresees little difficulty in the management of this case as a class action.

90.     The laws of Washington, D.C. govern the claims of the entire class. Continental group long-term care policies delivered in Washington, D.C. are governed by the laws of Washington, D.C. irrespective of the individual insured's state of residence.

## FIRST CAUSE OF ACTION

## (BREACH OF CONTRACT)

91.     Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

92.     The Policy (long-term care policy number 01-A-9819) issued by Continental constitutes a contract between Continental and Plaintiff.

93.     Under the express terms of the Policy, Continental agreed that it could not change the insured's premiums because of age or health.

94.     Under the express terms of the Policy, Continental agreed that while it could "change the Insured's premiums based on his or her premium class," it could do so "only if We change the premiums for all other Insureds in the same premium class."

95.     Continental's insurance policies are standardized documents, and the same terms govern Continental's long-term care policies with the Class.

96.     Continental breached its contracts with Plaintiff and the Class by increasing premiums without increasing the premiums for all other Insureds in the same premium class. Continental increased the premiums under the Policy in different states at different times, and in

different amounts, in violation of the policy language prohibiting increases that are not uniform across the premium class.

97.     Continental's brochure, outline of coverage, and policy further create an enforceable expectation that future increases in premiums and purchases of additional coverage would not take place if the automatic benefit increase option for inflation protection is purchased. Further, a guaranteed level premium arises in the policy by operation of law because Continental failed to "disclose in a conspicuous manner that the premium may change in the future" as required by 26-A D.C. Mun. Regs. § 2624.7.

98.     Continental breached its contracts with Plaintiff and the Class by increasing premiums even though the automatic benefit increase option for inflation protection was purchased.

99.     Because of Continental's breaches, Plaintiff and the Class paid increased premiums that they would not have had to pay had Continental followed the policy. Plaintiff and the Class have been damaged and will continue to be damaged.

### SECOND CAUSE OF ACTION

### (BREACH OF THE IMPLIED COVENANT<br>OF GOOD FAITH AND FAIR DEALING)

100.     Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

101.     As an enforceable contract, the Policy (long-term care policy number 01-A-9819) issued by Continental includes an implied covenant of good faith and fair dealing, such that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

102.    Under the express terms of the Policy, Continental agreed that it could not change the insured's premiums because of age or health.

103.    Under the express terms of the Policy, Continental agreed that while it could "change the Insured's premiums based on his or her premium class," it could do so "only if We change the premiums for all other Insureds in the same premium class."

104.    Continental's insurance policies are standardized documents, and the same terms govern Continental's long-term care policies with the Class.

105.    Continental's brochure, outline of coverage, and policy further create an enforceable expectation that future increases in premiums and purchases of additional coverage would not take place if the automatic benefit increase option for inflation protection is purchased. Future premium increases substantially impair or defeat the purpose of an automatic benefit increase feature of the policy. Further, the implied covenant of good faith and fair dealing requires a level premium because Continental failed to "disclose in a conspicuous manner that the premium may change in the future" as required by 26-A D.C. Mun. Regs. § 2624.7.

106.    Continental breached the implied covenant of good faith and fair dealing with Plaintiff and the Class by increasing premiums under the Policy in different states at different times, and in different amounts. Continental also breached the implied covenant of good faith and fair dealing with Plaintiff and the Class by increasing premiums under the Policy despite the purchase of an automatic benefit increase feature. So doing, Continental increased the premiums unreasonably and with an improper motive, arbitrarily, capriciously, and in a manner inconsistent with the reasonable expectations of the parties. These premium increases deprived Plaintiff and the Class of the fruits of the contract.

107.    Because of Continental's breach, Plaintiff and the Class paid increased premiums that they would not have had to pay had Continental followed the policy. Plaintiff and the Class have been damaged and will continue to be damaged.

### THIRD CAUSE OF ACTION

### (VIOLATION OF THE DISTRICT OF COLUMBIA CONSUMER PROTECTION PROCEDURES ACT, D.C. CODE § 28-3901, *et seq.*)

108.    Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

109.    Continental is a "person" under D.C. Code § 28-3901(a)(1).

110.    Plaintiff is a "consumer" as defined by D.C. Code § 28-3901(a)(2), who purchased a policy certificate issued under the Policy.

111.    Continental violated the Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3901, *et seq.*, through its unfair and deceptive practices in marketing and selling long-term care policies to Plaintiff and the Class, including (1) representing that long-term care insurance policies have characteristics, uses, benefits, and qualities which they do not have, (2) representing that long-term care insurance policies are of a particular standard, quality, and grade when they are not, (3) advertising long-term care insurance policies with the intent not to sell them as advertised, (4) representing that a transaction involving long-term care insurance policies confers rights, remedies, and obligations which it does not, (5) representing that the subject of a transaction involving long-term care insurance policies has been supplied in accordance with a previous representation when it has not, and (6) misrepresenting a material fact which has a tendency to mislead.

112.    Continental's brochure and other marketing materials contained deceptive statements about future premium increases. For example, the Group Long-Term Care Program

brochure for the Federal Judiciary states that "[f]or premiums to change, Continental would have to change premiums for *everyone* in your age category who has the kind of coverage plan that you do." (Emphasis added.) The same brochure also states that when the automatic benefit increase inflation protection features is purchased, "you will not need to worry about increasing your premium in the future or about tracking offers of additional coverage."

113. Continental knew that it planned to seek to increase premiums in amounts that varied from one state to the next.

114. Continental further knew that it planned to increase premiums for purchasers of the automatic benefit increase option, even though it failed to disclose that premiums could increase despite the purchase of that option.

115. The foregoing representations were deceptive, false, and misleading because when they were made, Continental knew that it would not seek to uniformly increase premiums for everyone in a given age category but would raise premiums at different intervals and in different amounts from one state to the next. Plaintiff and the Class could be forced to bear (and did bear) a greater cost of premiums than they should have because the amount of their premiums exceeded premiums charged to members of the same age category in other states, forcing them to bear a greater share of the cost of the policy than members of the same age category in other states.

116. The foregoing representations were deceptive, false, and misleading because when they were made, Continental knew that it might or would raise premiums for purchasers of the automatic benefit increase option. Rather than receiving protection against inflation in exchange for paying more than double for coverage as represented, purchasers of the automatic benefit increase now bear the cost of inflation as Continental doubles their premiums again.

117.    Continental made the foregoing deceptive representation in the conduct of trade or commerce.

118.    Continental's actions affect the public interest because Plaintiff was injured in exactly the same way as thousands of others purchasing Continental long-term care insurance policies as a result of Continental's generalized course of deception. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Continental's business.

119.    Plaintiff and the Class suffered ascertainable loss as a result of Defendant's deceptive conduct. Plaintiff overpaid for his long-term care insurance certificate and did not receive the benefit of the bargain. Continental's conduct proximately caused the injuries to Plaintiff and the Class. Because of Continental's deceptive conduct, Plaintiff and the Class have suffered injury and will suffer injury in the future in the form of premium increases which should not have been sought.

120.    Continental intended that the foregoing deceptive representation be relied upon by purchasers of its long-term care insurance policies. Plaintiff and the Class were exposed to and relied upon the foregoing deceptive representation while purchasing long-term care coverage from Continental. Plaintiff and the Class would not have purchased Continental's long-term care coverage had they known that premium increases would vary state by state, or that premiums would increase despite the purchase of inflation protection.

## FOURTH CAUSE OF ACTION

### (FRAUD)

121.    Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

122.    Continental's brochure and other marketing materials contained deceptive statements about future premium increases. For example, the Group Long-Term Care Program

- 28 -

brochure for the Federal Judiciary states that "[f]or premiums to change, Continental would have to change premiums for *everyone* in your age category who has the kind of coverage plan that you do." (Emphasis added.) The same brochure also states that when the automatic benefit increase inflation protection features is purchased, "you will not need to worry about increasing your premium in the future or about tracking offers of additional coverage."

123.    Continental knew that it planned to seek to increase premiums in amounts that varied from one state to the next.

124.    Continental further knew that it planned to increase premiums for purchasers of the automatic benefit increase option, even though it failed to disclose that premiums could increase despite the purchase of that option.

125.    The foregoing representations were deceptive, false, and misleading because at the time that they were made, Continental knew that it would not uniformly increase premiums for everyone in a given age category but would raise premiums at different intervals and in different amounts from one state to the next. As a result, Plaintiff and the Class could be forced to bear (and did bear) a greater cost of premiums than they should have because the amount of their premiums exceeded premiums charged to members of the same age category in other states, forcing them to bear a greater share of the cost of the policy than members of the same age category in other states.

126.    The foregoing representations were deceptive, false, and misleading because when they were made, Continental knew that it might or would raise premiums for purchasers of the automatic benefit increase option. Rather than receiving protection against inflation in exchange for paying more than double for coverage as represented, purchasers of the automatic benefit increase now bear the cost of inflation as Continental doubles their premiums again.

127.     Continental intended that the foregoing deceptive representation be relied upon by purchasers of its long-term care insurance policies. Plaintiff and the Class were exposed to and relied upon the foregoing deceptive representations while purchasing long-term care coverage from Continental. Plaintiff and the Class would not have purchased Continental's long-term care coverage had they known that premium increases would vary state by state, or that premiums would increase despite the purchase of inflation protection. The nature and amount of premium increases for long-term care coverage are facts highly material to Plaintiff and the Class because such coverage is purchased to provide long-term financial stability.

128.     Because of Continental's false, deceptive, and misleading representation, Plaintiff and the Class have suffered injury and will suffer injury in the future in the form of an insurance product which was materially different from what was promised and premium increases that should not have occurred.

## FIFTH CAUSE OF ACTION

## (FRAUDULENT CONCEALMENT)

129.     Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

130.     Continental's brochure and other marketing materials failed to disclose that future premium increases would not be uniform across an age category but would vary from one state to the next. The Group Long-Term Care Program brochure for the Federal Judiciary states only that "[f]or premiums to change, Continental would have to change premiums for *everyone* in your age category who has the kind of coverage plan that you do." (Emphasis added.)

131.     Continental's brochure and other marketing materials failed to disclose that purchasers of the automatic benefit increase option would be subject to future premium increases. The brochure states that when the automatic benefit increase inflation protection

features is purchased, "you will not need to worry about increasing your premium in the future or about tracking offers of additional coverage."

132.    Continental knew that it planned to seek to increase premiums in amounts that varied from one state to the next.

133.    Continental further knew that it planned to increase premiums for purchasers of the automatic benefit increase option, even though it failed to disclose that premiums could increase despite the purchase of that option.

134.    Continental's failure to disclose its intention to seek premium increases that varied in timing and amount from state to state, rather than uniform increases across the age category, constituted a fraudulent omission. As a result, Plaintiff and the Class could be forced to bear (and did bear) a greater cost of premiums than they should have because the amount of their premiums exceeded premiums charged to members of the same age category in other states, forcing them to bear a greater share of the cost of the policy than members of the same age category in other states.

135.    By omitting this information, Continental intended to induce a false belief in Plaintiff and the Class that premium increases would be uniform in timing and amount across a given age category. The nature and amount of premium increases for long-term care coverage are facts highly material to Plaintiff and the Class because such coverage is purchased to provide long-term financial stability.

136.    Continental's failure to disclose that it might or would raise premiums for purchasers of the automatic benefit increase inflation protection option constituted a fraudulent omission. Rather than receiving protection against inflation in exchange for paying more than

double for coverage as represented, purchasers of the automatic benefit increase now bear the cost of inflation as Continental doubles their premiums again.

137. By omitting this information, Continental intended to induce a false belief in Plaintiff and the Class that purchasing the automatic benefit increase inflation protection feature would protect them against future premium increases. The nature and amount of premium increases for long-term care coverage are facts highly material to Plaintiff and the Class because such coverage is purchased to provide long-term financial stability.

138. Plaintiff and the Class would not have purchased Continental's long-term care coverage had they known that premium increases would vary state by state. Plaintiff and the Class would not have purchased Continental's long-term care coverage had they known that premium increases were possible even if they purchased inflation protection in the form of an automatic benefit increase feature.

139. Because of Continental's fraudulent omission, Plaintiff and the Class have suffered injury and will suffer injury in the future in the form of an insurance product that was materially different from what was promised and premium increases that should not have occurred.

**SIXTH CAUSE OF ACTION**

**(DECLARATORY AND INJUNCTIVE RELIEF)**

140. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

141. Plaintiff brings this cause of action for himself and the Class pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 seeking a declaration that, for those who maintain long-term care insurance with Continental, it is a violation of District of Columbia law and the insurance contract for Continental to increase premiums in amounts that vary state-by-

state rather than for the entire premium class or age category. Plaintiff further seeks a declaration that it is a violation of District of Columbia law and the insurance contract for Continental to increase premiums on policies that bear an automatic benefit increase feature.

142.     This court has the power to declare the rights of said Continental policyholders and those who would be insured under such policies and who may suffer similar losses in the future.

143.     Plaintiff, for himself and on behalf of the Class, seeks a declaration of his rights under the Continental policy, and seeks a declaration of the rights and liabilities of the parties herein.

144.     Absent judicial intervention, Continental will seek to increase premiums in amounts that vary state-by-state rather than for the entire premium class or age category, and Continental will seek to increase premiums for policies bearing an automatic benefit increase feature. In respect of Continental's continuing unlawful practices, Plaintiff has no plain, speedy, or adequate remedy at law, the interests of the parties favor an injunction, and an injunction is in the public interest. Plaintiff therefore seeks an order permanently enjoining Continental from increasing long-term care insurance premiums by amounts that vary state-to-state or for any subgroup of insureds other than premium class or age category. Plaintiff further seeks an order permanently enjoining Continental from increasing long-term care insurance premiums for policies bearing an automatic benefit increase feature.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following judgment:

A.     An Order certifying this action as a class action, including certifying each cause of action under the appropriate subsection of Fed. R. Civ. P. 23;

B.      An Order appointing Plaintiff as class representative and appointing the undersigned counsel to represent the Class;

C.      Rescission and return of all premiums paid;

D.      Disgorgement of ill-gotten gains;

E.      Declaratory and injunctive relief, including an injunction requiring Continental to cease and desist from increasing premiums in amounts that vary state-to-state or for any subgroup of insureds other than premium class or age category and an injunction requiring Continental to cease and desist from increasing premiums on policies bearing an automatic benefit increase feature;

F.      In the alternative, compensatory, statutory, and punitive damages;

G.      An award of attorney's fees and costs, as provided by law and/or as would be reasonable from any recovery of monies recovered for or benefits bestowed upon the Class; and

H.      Such other and further relief as this Court may deem just, equitable, or proper.

## JURY TRIAL DEMAND

The Plaintiff respectfully requests a jury trial for all matters so triable.

DATED: July 11, 2018                          Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/ Steve W. Berman*
   Steve W. Berman
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Robert B. Carey (*pro hac vice* pending)
John M. DeStefano (*pro hac vice* pending)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, AZ 85003
Telephone: (602) 840-5900
rob@hbsslaw.com
johnd@hbsslaw.com

Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4960
Facsimile: (708) 628-4950
beth@hbsslaw.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed electronically via the Court's ECF system, on July 11, 2018. Notice of electronic filing will be sent to all parties by operation of the Court's electronic filing system.

DATED: July 11, 2018                    /s/ *Steve Berman*_____
                                        Steve Berman