**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

CARLTON F. GUNN, individually and on
behalf of all others similarly situated,

                         Plaintiff,

      v.

CONTINENTIAL CASUALTY COMPANY,

                       Defendant.

No. 18-cv-03314

Hon. Charles P. Kocoras

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**COMBINED MOTION TO DISMISS OR STAY**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................... 1

II. LEGAL STANDARD.............................................................................................. 3

III. ARGUMENT ........................................................................................................ 3

    A. Continental breached the policy and deceived consumers by promising groupwide premiums and then raising them unequally from state to state ............................................................................................. 3

        1. Continental promises and represents that premium increases will be implemented by age group, not state of residency ............................................................................... 3

        2. Continental's premium increases breach the contract and the implied covenant of good faith and fair dealing because they vary state to state ....................................................... 4

        3. Continental committed consumer deception by misrepresenting the nature of the premium as groupwide while knowing it would pursue unequal increases ................. 7

        4. Continental defrauded consumers by misrepresenting the nature of the premium as groupwide while knowing it would pursue unequal increases................................. 10

    B. Continental breached the policy and deceived consumers by raising premiums on inflation protected policies........................................... 11

        1. Continental's premium increases undermine the purpose of inflation protection................................................................ 11

        2. Continental committed consumer deception by increasing premiums on inflation-protected policies ................................. 14

        3. Continental defrauded consumers by increasing premiums on inflation-protected policies ................................................. 16

        4. Continental breached the policy by increasing premiums despite the inflation-protection rider........................................ 17

        5. Gunn's allegations that Continental breached its inflation protection are consistent with his allegations that Continental breached express terms.......................................... 19

010738-11 1056933 V1

C.     The D.C. Consumer Protection Procedures Act applies to Gunn's claims because the master policy was delivered in D.C. to an insured located in D.C. .................................................................. 20

D.     Filed rate and primary jurisdiction doctrines do not bar Gunn's claims because no filed rate prevents Continental from honoring its promises and representations ................................................. 21

       1.     Gunn's contract claims address Continental's obligations, not the reasonableness of the rate, so the filed-rate doctrine does not apply .................................................................. 21

       2.     Gunn's consumer deception and fraud claims address marketing behavior, not the reasonableness of the rate, so the filed-rate doctrine does not apply ................................. 25

       3.     Cases cited by Continental confirm that the filed-rate doctrine does not bar Gunn's claims ........................................ 26

       4.     Doctrines of abstention and primary jurisdiction do not prevent this Court from deciding Gunn's claims ................... 29

E.     The economic loss rule does not bar Gunn's fraud claims ................. 30

F.     There is no basis to dismiss Gunn's claims for declaratory and injunctive relief. ......................................................................... 30

IV.    CONCLUSION .......................................................................................... 31

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*1137 19th St. Associates, Ltd. P'ship v. D.C.*,
   769 A.2d 155 (D.C. 2001) ...................................................................14

*Adams v. King Cty.*,
   192 P.3d 891 (Wash. 2008)................................................................11

*Alexander v. Wash. Mut., Inc.*,
   No. CIV.A 07-4226, 2008 WL 2600323 (E.D. Pa. June 30, 2008).......................25

*Am. Bankers Ins. Co. of Fla. v. Alexander*,
   818 So. 2d 1073 (Miss. 2001), *overruled on other grounds by Capital City
   Ins. Co. v. G.B. "Boots" Smith Corp.*, 889 So. 2d 505 (Miss. 2004) ....................25

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................3

*Aston v. Johnson & Johnson*,
   248 F. Supp. 3d 43 (D.D.C. 2017) ......................................................20

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................3

*Beller v. William Penn Life Ins. Co. of N.Y.*,
   778 N.Y.S.2d 82 (N.Y. App. Div. 2004) ..........................................21, 23

*Bhasker v. Kemper Cas. Ins. Co.*,
   284 F. Supp. 3d 1191 (D.N.M. 2018) .................................................25

*Birnbaum v. Sprint Communications Co.*,
   No. 96-CV-25141, 1996 WL 897326 (E.D.N.Y. Nov. 19, 1996)..........................27

*Broenen v. Beaunit Corp.*,
   440 F.2d 1244 (7th Cir. 1970) ..............................................................6

*Burford v. Sun Oil Co.*,
   319 U.S. 315 (1943).........................................................................29

*Cahnmann v. Sprint Corporation*,
   961 F. Supp. 1229 (N.D. Ill. 1997) ......................................................27

*Chase v. State Farm Fire & Cas. Co.*,
   780 A.2d 1123 (D.C. 2001) ..................................................................6

- iii -

*Clark v. Prudential Ins. Co. of Am.*,
   CIV. 08-6197 DRD, 2011 WL 940729 (D.N.J. Mar. 15, 2011) ......................................23, 28

*Cornish Coll. of the Arts v. 1000 Va Ltd. P'ship*,
   242 P.3d 1 (Wash. Ct. App. 2010) .........................................................................................6

*Dyer v. Bilaal*,
   983 A.2d 349 (D.C. 2009) ................................................................................................8, 14

*Edmonson v. Popchoi*,
   256 P.3d 1223 (Wash. 2011).............................................................................................5, 19

*Elcon Const., Inc. v. E. Wash. Univ.*,
   273 P.3d 965 (Wash. 2012)..................................................................................................30

*Erickson v. Sentry Life Ins. Co.*,
   719 P.2d 160 (Wash. Ct. App. 1986)...................................................................................20

*Euclid Ins. Agencies, Inc. v. Am. Ass'n of Orthodontists*,
   1998 WL 60775 (N.D. Ill. Feb. 5, 1998) ..................................................................21, 24, 27

*Friedman v. AARP, Inc.*,
   283 F. Supp. 3d 873 (C.D. Cal. 2018) ............................................................................25, 29

*FTC v. Sperry & Hutchinson Co.*,
   405 U.S. 233 (1972)............................................................................................................9, 15

*Gelfound v. Metlife Ins. Co. of Conn.*,
   998 F. Supp. 2d 1356 (S.D. Fla. 2014) ................................................................................24

*Gipson v. Fleet Mortg. Grp., Inc.*,
   232 F. Supp. 2d 691 (S.D. Miss. 2002)................................................................................25

*Hallums v. Infinity Ins. Co.*,
   2017 WL 5749748 (S.D. Fla. June 2, 2017) ........................................................................25

*Hanson v. Acceleration Life Ins. Co.*,
   No. CIV A3-97-152, 1999 WL 33283345 (D.N.D. Mar. 16, 1999) ......................................23

*Himmelstein v. Comcast of the Dist., L.L.C.*,
   908 F. Supp. 2d 49 (D.D.C. 2012)........................................................................................29

*Kutner v. Sprint Communications Co. LP*,
   971 F. Supp. 302 (W.D. Tenn. 1997)...................................................................................27

*In re Managed Care Litig.*,
   150 F. Supp. 2d 1330 (S.D. Fla. 2001) ...........................................................................25, 26

*Margolis v. U-Haul Int'l, Inc.*,
   818 F. Supp. 2d 91 (D.D.C. 2011) .......................................................................20

*Martinez v. Universal Laminating, Ltd.*,
   No. 02 C 4410, 2002 WL 31557621 (N.D. Ill. Nov. 18, 2002) .................................5

*McCarthy Finance, Inc. v. Premera*,
   347 P.3d 872 (Wash. 2015) ..........................................................................27, 28

*Metz v. Joe Rizza Imports, Inc.*,
   700 F. Supp. 2d 983 (N.D. Ill. 2010) (permitting consideration of documents
   attached to response to motion to dismiss in appropriate cases) .............................12

*Newman v. Metro. Life Ins. Co.*,
   885 F.3d 992 (7th Cir. 2018) ....................................................................... *passim*

*In re Pa. Title Ins. Antitrust Litig.*,
   648 F. Supp. 2d 663 (E.D. Pa. 2009) ...................................................................30

*Pearson v. Chung*,
   961 A.2d 1067 (D.C. 2008) ....................................................................... 7, 8, 15

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*,
   631 F.3d 436 (7th Cir. 2011) .................................................................................3

*Polygon Nw. Co. LLC v. Louisiana-Pacific Corp.*,
   NO. C11-620, 2012 WL 2504873 (W.D. Wash. June 28, 2012) .............................30

*Prudential Ins. Co. of Am. v. Friedrich*,
   1990 WL 141430 (N.D. Ill. Sept. 24, 1990) .....................................20, 22, 27, 29

*Quadrant Corp. v. Am. States Ins. Co.*,
   110 P.3d 733 (Wash. 2005) ..................................................................................6

*Qwest Corp. v. Kelly*,
   59 P.3d 789 (Ariz. Ct. App. 2002) ......................................................................25

*Randleman v. Fid. Nat'l Title Ins. Co.*,
   465 F. Supp. 2d 812 (N.D. Ohio 2006) ...................................................21, 22, 29

*Saucier v. Countrywide Home Loans*,
   64 A.3d 428 (D.C. 2013) ......................................................................................7

*Shaw v. Marriott Int'l Inc.*,
   605 F.3d 1039 (D.C. Cir. 2010) (holding that "nothing related to the dispute
   between the two occurred in the District of Columbia") .........................................20

*Spokeo, Inc. v. Robins,*
    136 S. Ct. 1540 (2016) ..................................................................................7

*Swanson v. Citibank, N.A.,*
    614 F.3d 400 (7th Cir. 2010) .......................................................................3

*Toulon v. Cont'l Cas. Co.,*
    877 F.3d 725 (7th Cir. 2017) ....................................................................4, 5

*Town of Norwood v. New England Power Co.,*
    202 F.3d 408 (1st Cir. 2000).......................................................................28

*Va Acad. of Clinical Psychologists v. Grp. Hospitalization & Med. Servs., Inc.,*
    878 A.2d 1226 (D.C. 2005) ...................................................................10, 16

*Wagner v. Wagner,*
    621 P.2d 1279 (Wash. 1980).........................................................................7

*West Coast, Inc. v. Snohomish County,*
    48 P.3d 997 (Wash. Ct. App. 2002) ...........................................................11

*Westby v. Gorsuch,*
    50 P.3d 284 (Wash. Ct. App. 2002) ...........................................................11

*Wright v. Howard Univ.,*
    60 A.3d 749 (D.C. 2013) ..........................................................................5, 19

*Zangara v. Travelers Indem. Co. of Am.,*
    423 F. Supp. 2d 762 (N.D. Ohio 2006), *vacated on other grounds,* 2006 WL
    825231 (N.D. Ohio Mar. 30, 2006) ...............................................25, 28, 29

## STATUTES

CPPA............................................................................................ *passim*

D.C. Code Ann. § 28-3904 ..............................................................................7

D.C. Code Ann. § 28-3904(a), (d), (e), (f)....................................................14

D.C.Code § 28–3901(c) ...................................................................................7

D.C. Code § 28-3901(a)(6) ............................................................................20

D.C. Code § 28-3901(d)...............................................................................9, 15

D.C. Code § 31-2231.03(1)...........................................................................9, 15

D.C. Consumer Protection Procedures Act......................................................7

- vi -

D.C. Consumer Protection Procedures Act..............................................................19

Illinois Consumer Fraud Act...................................................................................9

## OTHER AUTHORITIES

50 Ill. Adm. Code 2012.80(f)................................................................................11

available at http://serff.disb.dc.gov/....................................................................5

D.C. Mun. Regs. § 2631.1 .....................................................................................22

D.C. Mun. Regs. tit. 26-A, § 2610.2 .....................................................................14

D.C. Mun. Regs. tit. 26-A, § 2624.7 ...................................................11, 13, 15, 17

D.C. Mun. Regs. tit. 26-A, § 2635.2(d) .............................................................9, 15

Fed. R. Civ. P. 8(d) ...............................................................................................19

Ga. Comp. R. & Regs. 120-2-16-.13(6)................................................................11

N.J.A.C. 11:4-34.11(f)...........................................................................................11

Restatement (Second) of Conflict of Laws............................................................20

*Restatement (Second) of Conflict of Laws* § 192 cmt. h ......................................20

Rule 9(b) ..................................................................................................................3

WAC § 284-54-270(6)...........................................................................................17

Wash. Admin. Code 284-54-015(4).......................................................................15

Wash. Admin. Code 284-54-270(6), 284-83-055(6) ..................................11, 12, 13, 15

Wash. Admin. Code 284-83-030(1)(b)..................................................................14

Wash. Admin. Code § 284-54-015(4)....................................................................18

5 Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 1283 (3d ed 2004) ............................19

## I.    INTRODUCTION

A seller of long-term care insurance must accurately disclose the possibility of future premium increases and must not breach contractual restrictions on premium increases. Continental Casualty Company ("Continental") sold long-term care insurance to employees of the federal judiciary including Plaintiff Gunn ("Gunn"), promising and representing to Gunn and group as a whole, no premium increases would occur unless they applied group-wide. Yet faced with tight regulatory standards in the District of Columbia where the group policy was delivered and annual premium increases are capped at 10%, Continental went shopping for the maximum increase that every individual state would allow, seeking increases as high as 95%, raising premiums unequally state to state, and breaching the policy. Continental also sold Gunn and many others an inflation-protection feature that increases coverage by a fixed percentage each year, charging double the standard premium for it up front. Nonetheless, in response to rising costs Continental is now doubling the already-doubled premiums on Gunn's policy, undermining the inflation protection that Gunn thought he was buying.

Continental marketed and sold long-term care insurance as a financial planning product to provide Gunn and consumers like him with stability in old age when they most need it. Continental made the odds when it set the premiums and drafted the policy; it must now honor its long-term commitments to consumers who invested by paying premiums for decades. If Continental's actuarial predictions turned out to be wrong, Continental cannot now violate the policy and the law just to recoup its losses from consumers years later when it is too late for them to buy affordable coverage or make another plan to cover the high cost of nursing home care. Continental's unlawful premium increases and misleading representations give rise to breach of contract, fraud, and consumer protection claims.

- 1 -

Continental's motion to dismiss[1] disregards the terms of the contract that it drafted promising that premium increases would be consistent across the premium class, defined only by the age of the insured. Continental likewise disregards its brochure promising that for premiums to increase they would have to increase for the insured's entire age category. As the Seventh Circuit recently confirmed, Continental cannot now redefine the term "premium class" to suit its interests. *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992 (7th Cir. 2018). It must honor its promises and representations to treat the class equally.

Similarly, Continental ignores the obvious purpose and understanding of the inflation protection feature it sold for double the usual premium without disclosing that those premiums could increase even more. Most jurisdictions, including D.C. and Washington, expressly outlaw the sale of inflation-protected policies without clear disclosure that premiums may increase despite the purchase of the protection. Continental's practice is deceptive and fraudulent, and because an expectation of a level premium arises by operation of law, any increase also breaches the contract.

The filed-rate doctrine does not immunize Continental from Gunn's claims. The doctrine does not apply because Gunn's claims do not attack the reasonableness of the rates charged as a regulatory matter, but whether Continental's premium increases breach the contract and whether Continental's policy and marketing materials are misleading. No state law (let alone any insurance regulator) forced Continental to raise premiums in ways that violated the policy it drafted. Moreover, Continental cites no filed rate as to the nationwide group or as to inflation-protected policies. Continental has not filed for a nationwide rate increase in D.C. where the

---

[1] Dkt. # 34-35. Citations to "Mot." refer to the original page numbers of the memorandum in support (Dkt. # 35).

master policy for the nationwide group was delivered. And the Washington State insurance commissioner has not purported to approve the nationwide premium Continental promised or any specific rates for the automatic benefit increase rider. The doctrines of primary jurisdiction and abstention do not apply because this Court is competent to decide whether Continental's premium hikes violate the policy and consumer protection statutes.

## II.   LEGAL STANDARD

To survive a motion to dismiss, the plaintiff need only allege facts showing that the plaintiff's claims are "plausible," that is, that they raise the right to recovery above a speculative level. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "'Plausibility' in this context does not imply that the district court should decide whose version to believe, or which version is more likely than not." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). "[A]ll that is necessary is that the claim for relief be stated with brevity, conciseness, and clarity[.]" *Id.* (quoting 5 Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 1215 at 165-173 (3d ed. 2004)). While Rule 9(b) requires fraud to be pled with particularity, the rule is applied flexibly depending on the facts of the case and whether information lies beyond the plaintiff's control. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011).

## III.   ARGUMENT

**A.   Continental breached the policy and deceived consumers by promising groupwide premiums and then raising them unequally from state to state**

> **1.   Continental promises and represents that premium increases will be implemented by age group, not state of residency.**

Gunn's policy and certificate both provide that any changes to the premium must be "***based on his or her premium class***, but only if we change the premiums for all other Insureds in the same premium class." (FAC ¶ 23 (emphasis added).) The brochure distributed with the

- 3 -

policy confirms that "for premiums to change, Continental would have to change premiums for *everyone in your age category* who has the kind of coverage plan that you do." (FAC ¶ 34 (emphasis added).) The brochure goes on to emphasize that premium classes depend only upon age: "The younger you are when your coverage begins, the lower your premiums will be *for the duration of your participation in the plan*." FAC ¶ 32 (emphasis added). The natural implication is that younger age groups will always pay lower premiums relative to older age groups. The premium class refers to age, and any premium increases must be based on age, not geography.

Other Continental long-term care policy forms make clear that premium increases may vary from state to state. *See Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 731 (7th Cir. 2017) (discussing Continental long-term care policy stating, "Any change will apply to all policies in the same class as Yours *in the state where the policy was issued*" (emphasis added)). But nowhere did Continental say this in Gunn's policy. Gunn's policy and certificate do not define "premium class" as anything other than his age group within the federal judiciary. (FAC ¶¶ 26, 36.) Nor does Continental claim that premium classes varied by state—or that Gunn was so informed—at the time the policy was issued. The rate tables Continental included with the master policy and brochure show only one rate for each age group of the federal judiciary as a whole. (FAC ¶¶ 36-38.)

## 2. Continental's premium increases breach the contract and the implied covenant of good faith and fair dealing because they vary state to state.

Despite these clear promises, Continental has sought and obtained different premium increases in different states, rather than increases based on the insured's premium class. (FAC ¶ 23, 45.) Employees of the federal judiciary reasonably expected to bear the cost of coverage equally within their age groups nationwide. (FAC ¶¶ 27, 38.) But Continental, in an effort to minimize the cost of these policies, has opportunistically sought to impose the largest increase

- 4 -

that it can in each state. (FAC ¶ 46; Mot. at 15 ("CNA did, in fact, seek the identical 95% "change" in premiums for all members of the program in all states (except in those jurisdictions that impose annual limits)".) While the District of Columbia has limited Continental to a mere 10% increase (FAC ¶ 45), Continental will impose a 95% increase on insureds who purchased coverage while residing in Washington and other states (FAC ¶ 46; Mot. at 15.).[2] Continental has already imposed a 25% increase on Washington insureds and plans to seek two more such increases. (FAC ¶¶ 40-41.) These increases breach the express terms of the contract promising that any premium increases will be made by age group only. (FAC ¶ 23.) For this reason, the facts and claims in this case resemble those in *Newman*, where the insurer breached discrete promises and representations restricting premium increases. 885 F.3d at 998-1000. Continental's citation of *Toulon* (Mot. at 13), where the plaintiffs invoked no such restrictions, is inapposite. 877 F.3d at 731.

Similarly, the premium increases breach the implied covenant of good faith and fair dealing because Continental failed to exercise its discretion over rate increases reasonably, in a manner consistent with Gunn's justified expectations. *Wright v. Howard Univ.*, 60 A.3d 749, 754 (D.C. 2013); *Edmonson v. Popchoi*, 256 P.3d 1223, 1227 (Wash. 2011). Any discretion it had to raise premiums was exercised in a way that defeated the essential purpose of the contract: to create a nationwide insurance block of federal employees who equally share the cost of group long-term care insurance.

---

[2] The Washington D.C. filing and related submissions are available at http://serff.disb.dc.gov/ (SERFF no. CNAB-131148175). A paginated copy is also attached hereto as Ex. A. As Continental acknowledges, these public filings may be considered at the pleading stage as public administrative records that are referenced in the Complaint. *E.g.*, *Martinez v. Universal Laminating, Ltd.*, No. 02 C 4410, 2002 WL 31557621, at *1 (N.D. Ill. Nov. 18, 2002).

Continental is wrong to argue that nothing in the contract provides for a nationwide premium class. As already shown, Continental's policy and certificate refer to only one premium class based on age group, not 50 state-to-state classes. Continental presents only nationwide rate tables with the policy. (Dkt. # 35-2, at 8-13.) And Continental promises evenhanded premium increases for each policyholder "*based on his or her premium class*"—not based on a state of residence or any other factor. To the extent that the policy contains no further definition of "premium class," this term unambiguously refers to the policyholder's age group. And even if ambiguous, this term must be interpreted in the manner most favorable to the insured. *Newman*, 881 F. 3d at 998-1000; *Chase v. State Farm Fire & Cas. Co.*, 780 A.2d 1123, 1127 (D.C. 2001); *Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733, 737 (Wash. 2005). It thus prohibits Continental from shopping for the largest rate increase it can obtain state to state. As extrinsic evidence that bears on any ambiguity, the brochure confirms this interpretation, emphasizing that premium tiers depend upon age group and that any premium increases will be made based on age group and apply across the age group.

Nor is there any merit to Continental's arguments that consumers contract with knowledge of state regulatory requirements or that those requirements are incorporated into the policy. (Mot. at 10.) State regulations are irrelevant to, and do not undermine, Continental's promises of a groupwide premium class based on age. No statute or regulation mandated any premium increase, let alone increases that vary from one state to the next. *Id*. Nor has any jurisdiction (such as D.C., where the policy was delivered for the entire group) approved any nationwide premium increase contemplated by the policy, as explained further in Section III.D, below. By contract, Continental has prohibited itself from seeking higher rates in some states, as it did here. This case is therefore unlike those cited by Continental (Mot. at 10-11) where a

- 6 -

statute supplied an operative term of the agreement. *See Broenen v. Beaunit Corp.*, 440 F.2d 1244, 1249 (7th Cir. 1970) (validity of consideration for statutory merger); *Cornish Coll. of the Arts v. 1000 Va Ltd. P'ship*, 242 P.3d 1, 12 (Wash. Ct. App. 2010) (equitable grace period under lease); *Wagner v. Wagner*, 621 P.2d 1279, 1282 (Wash. 1980) (standard for modifying alimony). No rate filing statute or process altered Continental's obligations under the contract or prevented Continental from complying with its policy.

### 3. Continental committed consumer deception by misrepresenting the nature of the premium as groupwide while knowing it would pursue unequal increases.

Similarly, Continental violated the D.C. Consumer Protection Procedures Act ("CPPA") because it misrepresented to Gunn and thousands of other purchasers the nature of the premium being charged—that is, that it was a nationwide premium that could be raised only based on the age group of the insured. The CPPA prohibits any person from engaging in "an unfair or deceptive trade practice whether or not any consumer is in fact misled, deceived, or damaged thereby, including to: (a) represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have; … (d) represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another; (e) misrepresent as to a material fact which has a tendency to mislead; . . . [or] (f) fail to state a material fact if such failure tends to mislead[.]" D.C. Code Ann. § 28-3904. An alleged unfair trade practice is viewed in terms of "how the practice would be viewed and understood by a reasonable consumer." *Pearson v. Chung*, 961 A.2d 1067, 1075 (D.C. 2008). The CPPA must "be construed and applied liberally to promote its purpose." D.C.Code § 28–3901(c). "[A] plaintiff need not allege or prove intentional misrepresentation or [intentional] failure to disclose to prevail on a claimed violation of § 28–3904(e) or (f) of the CPPA." *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 442 (D.C. 2013) (citations omitted).

Continental does not dispute that Gunn has standing to sue under the CPPA because he alleges that he relied on the brochure and policy and suffered injury. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016).

Continental's representations of a nationwide premium class are overtly deceptive and violate the statute. Deception is viewed in the light of all the information available to plaintiffs, including both the certificate and the brochure. *Newman*, 885 F.3d at 1001; *Pearson*, 961 A.2d at 1075. As shown above, Continental's brochure states that "for premiums to change, Continental would have to change premiums for *everyone in your age category* who has the kind of coverage plan that you do." (FAC ¶ 34.) The brochure promises that premiums will consistently remain lower for those who purchase at a younger age relative to those who purchase at an older age. Continental also presented in the brochure a rate table suggesting only one rate per age category in the nationwide group.

Continental's marketing statements were materially deceptive and misleading as to the nature of the policy. The representations in its brochure all point to a premium that is dictated by age group alone. (FAC ¶¶ 34-38.) For premiums to remain consistently lower for younger purchasers, it cannot be the case that a younger purchaser in one state might someday be paying a higher premium than an older purchaser in a different state. And the nationwide table of uniform rates leaves no possibility that rates will vary state to state. (FAC ¶¶ 37-38.) The policy and certificate do not state otherwise; rather, they promise that any rate increase for a policyholder will be "***based on his or her premium class***." (FAC ¶ 23 (emphasis added).) This is not a representation about law or future performance but about the essential nature of the premium charged and how it could be increased. The possibility of premium increases is highly material to a reasonable consumer because it affects the price of coverage. *Dyer v. Bilaal*, 983

- 8 -

A.2d 349, 356 (D.C. 2009). Instead of delivering a product priced by age category, Continental varies its rate increases based on the location of the insured. (FAC ¶¶ 40-46.) Its contrary representations are deceptive and as such violate the CPPA. *Newman*, 885 F.3d at 1001.

Similarly, Continental's bait-and-switch policy of selling coverage based upon a groupwide premium and then imposing state-to-state premiums violates the CPPA because it is unfair. Whether a trade practice is unfair depends on the following factors: (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers. *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972) (approving FTC statement of factors considered in measuring unfairness); D.C. Code § 28-3901(d) ("unfair or deceptive trade practice" should be construed with due consideration and weight given to the FTC's interpretation of the term); *accord Newman*, 885 F.3d 1002 (applying FTC definition of "unfair" under Illinois Consumer Fraud Act).

Continental's misrepresentations about policy terms offend D.C. public policy, as evidenced by statutory and regulatory prohibitions. D.C. Code § 31-2231.03(1) (prohibiting misrepresentations of the "benefits, advantages, conditions, or terms of a policy"); D.C. Mun. Regs. tit. 26-A, § 2635.2(d) (prohibiting misrepresentations of "a material fact in selling or offering to sell a long-term care insurance policy"); *Newman*, 885 F.3d at 1002. The rate increase is immoral, unethical, oppressive and unscrupulous because it saddles Gunn with a disproportionate share of the cost of coverage and puts him in the untenable position of having to decide whether to retain, downgrade, or abandon coverage after faithfully making payments for almost two decades. *Id*. And Gunn has suffered substantial injury in the form of paying a higher premium than he otherwise would have paid. *Id.* Gunn has alleged a valid claim under the CPPA as to group policy rate increases.

- 9 -

4.    **Continental defrauded consumers by misrepresenting the nature of the premium as groupwide while knowing it would pursue unequal increases.**

Gunn's fraudulent representation claim largely overlaps with his deceptive-practices claim under the CPPA. "The essential elements of common law fraud are: (1) a false representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation." *Va Acad. of Clinical Psychologists v. Grp. Hospitalization & Med. Servs., Inc.*, 878 A.2d 1226, 1233 (D.C. 2005). A false representation may be either "an affirmative misrepresentation or a failure to disclose a material fact when a duty to disclose that fact has arisen." *Sundberg*, 109 A.3d at 1131. And as Continental admits (Mot. at 18), misleading half-truths can create a duty to disclose that supports a claim of fraudulent non-disclosure. *Borzillo*, 57 A.2d at 197-99.

Continental's representations are false and material for the same reasons that they are deceptive under the CPPA as outlined above. Continental's policy and brochure contain false statements and half-truths suggesting that that premiums are based on age alone. (FAC ¶¶ 23-38.) But Continental admits that it just sent Gunn and others premium increase letters explaining in detail that rate increases would vary state to state. (FAC ¶¶ 40-46.) Continental's letters show that it could have explained the true nature of its premiums during the application process but decided not to do so. That omission, along with the false statements in the brochure, satisfies the requirements of pleading a false statement of material fact. Gunn relied to his detriment because he bought the coverage in reliance on the brochure showing only a nationwide premium class, understanding that premiums would not vary state to state.

Gunn's allegations further satisfy the knowledge and intent requirements. Continental is an established insurance company well-versed in the regulatory environment in which it operates. (FAC ¶ 51.) Given that Continental knew certain states might not approve certain

- 10 -

increases, it was well aware at the time the policy was sold that applications for rate increases could result in different rates in different jurisdictions, unless Continental proposed nationally uniform increases. Thus, it is no answer for Continental to claim that it lacked knowledge of future rate increases when the policy was sold or did not misrepresent an existing fact.[3] Continental knowingly misrepresented the nature of the premium, not whether specific increases would occur. Nor is there any relevance to Continental's argument that consumers are presumed to have knowledge of insurance regulations because as already explained, no regulation required Continental to seek non-uniform increases. Gunn has sufficiently alleged common law fraud based on premium differences within the nationwide group.

**B.      Continental breached the policy and deceived consumers by raising premiums on inflation protected policies**

**1.      Continental's premium increases undermine the purpose of inflation protection.**

Continental's marketing of the inflation protection feature Gunn bought is so deceptive it violates a model regulation adopted in over 30 jurisdictions including Washington and the District of Columbia. The regulation states that with any offer of inflation protection in the form of an automatic benefit increase feature, unless the policy provides a level premium, the offer "shall disclose in a conspicuous manner that the premium may change in the future unless the premium is guaranteed to remain constant." D.C. Mun. Regs. tit. 26-A, § 2624.7; Wash. Admin.

---

[3] *Westby v. Gorsuch*, 50 P.3d 284, 291 (Wash. Ct. App. 2002), cited by Continental, *rejected* the defendant's attempt to characterize a present representation about the product as a statement of its future value. *Adams v. King Cty.*, 192 P.3d 891, 902 (Wash. 2008), concerned the scope of consent to a tissue sample from a corpse. *West Coast, Inc. v. Snohomish County*, 48 P.3d 997, 1000 (Wash. Ct. App. 2002), involved statements by a public officer about a land development moratorium. Neither *Adams* nor *West Coast* bears any comparison to this case, where Continental has misrepresented the nature of an insurance product for sale. Moreover, both cases were decided on summary judgment, and Continental's state of mind cannot be determined on the pleadings.

- 11 -

Code 284-54-270(6), 284-83-055(6).[4] This rule ensures that inflation protection lives up to its billing and keeps an insurer from marketing extra coverage as "inflation protection" while protecting only itself from inflation by hiking premiums late in the game.

Continental states in its brochure that "Group Long-Term Care from CNA allows you to maintain your coverage with inflation—with automatic approval." (FAC ¶ 68; Federal Judiciary Group Long-Term Care Program brochure at 13, attached hereto as Ex. B.)[5] Continental's brochure describes two features supposedly designed to protect long-term care insureds against inflation: a yearly option to increase the daily benefit (the Guaranteed Benefit Increase feature) and an automatic annual increase of the daily benefit (the Lifetime Compound Automatic Increase benefit). (Ex. B, at 13.) Continental's marketing of the second option is fundamentally deceptive because it fails to disclose that despite the much higher premium paid for automatic increases, the premium could increase still further over the life of the policy, reducing or erasing the inflation protection that the benefit is supposed to provide.

Continental represents that the second form of inflation protection—the automatic increase—"will cost more initially" but that purchasing it "means you will not need to worry about increasing your premium in the future or about tracking offers of additional coverage." *Id.* The brochure also states, "Your plan can help your benefit keep pace with inflation if you choose to add the automatic inflation benefit feature." *Id.* While the brochure does not specify the higher

---

[4] *See also, e.g.*, 50 Ill. Adm. Code 2012.80(f) (Illinois); A.A.C. R20-6-1006(F) (Arizona); N.J.A.C. 11:4-34.11(f) (New Jersey); Ga. Comp. R. & Regs. 120-2-16-.13(6) (Georgia).

[5] The Court may take judicial notice of and consider the brochure at the pleading stage because it is referred to in Plaintiff's complaint (FAC ¶¶ 68-78) and is central to Plaintiff's claim. *Metz v. Joe Rizza Imports, Inc.*, 700 F. Supp. 2d 983, 988 (N.D. Ill. 2010) (permitting consideration of documents attached to response to motion to dismiss in appropriate cases).

- 12 -

premium for this benefit, Continental charged Gunn approximately double the standard premium for it. (FAC ¶ 52.)

Continental's policy and certificate add little more, stating, "On each anniversary of the Insured's Effective Date, We will increase by the Automatic Benefit Increase Percentage stated in the Schedule each benefit amount then in effect." (Dkt. # 35-3, at 17.) Nowhere in the brochure, policy, or certificate does Continental state that premiums may increase even if the automatic benefit increase feature is purchased. (FAC ¶ 70-74.) Yet even though Gunn paid double for this inflation protection, Continental is implementing premium increases that will double his premium again. (FAC ¶ 79.)

Continental's statements that a benefit will "keep pace with inflation" and that "you will not need to worry about increasing your premium" falsely imply that the premium will remain level even as benefits increase. If it were otherwise and premiums could float, insureds could easily find themselves *disadvantaged* relative to inflation should the premium increase at a higher rate than the coverage. By analogy, the buyer of an inflation-protected security has a clear expectation that the initial purchase price reflects the price of the protection. If inflation occurs and the buyer's investment pays off, the seller cannot return and demand that the buyer pay more because there was inflation. But that is exactly what Continental has done by returning to Gunn, asserting that Continental's costs of coverage are higher than expected, and raising the premium. Because premium increases could directly reduce and even destroy the economic benefit that an automatic coverage increase is supposed to provide, it is materially deceptive to sell the coverage without disclosing that premiums could still increase even if the benefit is purchased.

There is no merit to Continental's argument that the brochure and policy state elsewhere that premiums might change. (Mot. at 16-17.)  The model regulation requires a "conspicuous"

- 13 -

disclosure to be included with, and specific to, the offer of inflation protection itself. D.C. Mun. Regs. tit. 26-A, § 2624.7; Wash. Admin. Code 284-54-270(6), 284-83-055(6). This requirement is stated separately—and must be given separate effect—from the general requirement to disclose the insurer's right to change the premium. Wash. Admin. Code § 284-83-030(1)(b); D.C. Mun. Regs. tit. 26-A, § 2610.2. Otherwise, the inflation protection disclosure requirement would be a nullity. *1137 19th St. Assocs., Ltd. P'ship v. D.C.*, 769 A.2d 155, 161 (D.C. 2001) ("effect must be given every word of a statute").

Continental's own premium increase letter shows both that Continental is aware its statement is deceptive and that it easily could have avoided this problem. (Dkt. # 35-4, at 34.) In response to the question, "Why didn't my Inflation Protection Benefit Increase rider protect me from this premium increase," the letter says, "The Inflation Protection Benefit Increase rider increases your benefit levels on a periodic basis over the life of your certificate. It does not provide any type of protection or guarantee regarding your premiums." (Dkt. # 35-4, at 34.) Yet Continental chose not to explain this fact to Gunn at the time he purchased his policy or for 15 years thereafter, until it decided to raise the premium. (FAC ¶¶ 70-78.) It was deceptive for Continental to market such a "heads-I-win-tails-you-lose" product without conspicuously disclosing the risk that it might raise Gunn's already-doubled premium.

## 2. Continental committed consumer deception by increasing premiums on inflation-protected policies.

Continental's misleading and incomplete disclosure violates the CPPA because it would tend to mislead a reasonable consumer as to the nature of the premium charged and inflation protection provided under the policy—facts that are both highly material. D.C. Code Ann. § 28-3904(a), (d), (e), (f); *Dyer*, 983 A.2d at 356; *Newman*, 885 F.3d at 1001. Continental's marketing activities are deceptive, and Gunn has been harmed thereby. Gunn relied on Continental's

- 14 -

brochure and policy when he purchased coverage, and he has been harmed by premium increases that violate Continental's deceptive representations about inflation protection in both the policy and the brochure. *Newman*, 885 F.3d at 1001; *Pearson*, 961 A.2d at 1075.

Similarly, Continental's promise of an inflation-protected benefit that carries a floating premium violates the CPPA because it is unfair. As explained more fully above, whether a trade practice is unfair depends on (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers. *Sperry*, 405 U.S. at 244 n.5; D.C. Code § 28-3901(d); *Newman*, 885 F.3d at 1002.

Misrepresentations about policy terms offend D.C. public policy, as evidenced by statutory and regulatory prohibitions. D.C. Code Ann. § 31-2231.03(1) (prohibiting misrepresentations of the "benefits, advantages, conditions, or terms of a policy"); D.C. Mun. Regs. tit. 26-A, § 2635.2(d) (prohibiting misrepresentations of "a material fact in selling or offering to sell a long-term care insurance policy"); *Newman*, 885 F.3d at 1002. Additionally, the District of Columbia, Washington, and numerous other states have expressly prohibited the marketing of this form of inflation protection without a conspicuous disclosure that benefits might increase even if it is purchased. *E.g.*, D.C. Mun. Regs. tit. 26-A, § 2624.7; Wash. Admin. Code § 284-54-270(6), 284-83-055(6). It is no answer for Continental to say that the D.C. regulation took effect in 2005; Continental's marketing tactic did not become unfair overnight. Indeed, it was prohibited in Washington at the time Gunn purchased his policy. Wash. Admin. Code § 284-54-015(4) (regulation applicable to pre-2009 policies and certificates); WSR 94-14-100 at 144, 146 (July 20, 1994)[6] (adopting inflation protection disclosure requirement in 1994).

---

[6] *Available at* http://lawfilesext.leg.wa.gov/law/wsr/1978-1996/94-14.pdf (last visited Sept. 13, 2018).

Continental's marketing of the automatic benefit increase feature is additionally unfair because it is immoral, unethical, oppressive, and unscrupulous. As with the state-to-state premium increases, these premium increases occur many years after Gunn committed to buying coverage. To increase premiums now exploits Gunn's weak position, forcing him to decide whether to retain, downgrade, or abandon coverage after faithfully making payments for over a decade. Gunn has suffered substantial injury in the form of paying a higher premium than he otherwise would have paid for coverage that provided a floating premium despite the purchase of an automatic benefit increase. *Newman*, 885 F.3d at 1002. Gunn has therefore alleged a valid claim under the CPPA as to premium increases on policies bearing the automatic benefit increase feature.

### 3. Continental defrauded consumers by increasing premiums on inflation-protected policies.

For similar reasons, Continental's deceptive marketing of inflation protection and subsequent premium increases amounts to common law fraud. Continental made materially false, incomplete, and misleading statements about the nature of inflation protection as outlined above. *Sundberg*, 109 A.3d at 1131; *Borzillo*, 57 A.2d at 198. Moreover, Continental knew at the time that it sold the protection that its statements were likely to deceive, satisfying the knowledge and intent requirements of the tort. *Va Acad. of Clinical Psychologists*, 878 A.2d at 1233. As explained above, the value of an automatic yearly benefit increase depends heavily on whether premiums might change relative to the benefit. Continental was well aware of this fact when it marketed Gunn's policy. For this reason, multiple jurisdictions, including Washington, required Continental to include with its offer of an automatic benefit increase a conspicuous disclosure that premiums might rise even if the inflation-protection feature was purchased.

- 16 -

Indeed, when it came time to raise premiums, Continental anticipated the need to explain to consumers such as Gunn that inflation protection would not protect against premium increases. Its letter announcing the premium increase contains the following question and answer: "Why didn't my Inflation Protection Benefit Increase rider protect me from this premium increase? The Inflation Protection Benefit Increase rider increases your benefit levels on a periodic basis over the life of your certificate. It does not provide any type of protection or guarantee regarding your premiums." (Dkt. # 35-4, at 34.)

Nothing prevented Continental from telling consumers up front that premiums could float despite the purchase of an inflation protection rider, but Continental chose not to do so. Instead, Continental's marketing materials created a false impression that by paying double the standard premium, consumers could purchase more financial security in the form of a fixed automatic annual benefit increase when in reality that benefit left consumers exposed to astronomical premium increases. Continental plainly intended for consumers to rely on the brochure and policy materials in making their purchasing decision. Gunn did so and was injured because he paid more for coverage than he otherwise would have. *Newman*, 885 F.3d at 1001-02.

### 4. Continental breached the policy by increasing premiums despite the inflation-protection rider.

Continental's deceptive marketing of the inflation-protection rider also supports a claim for breach of contract and breach of the implied covenant of good faith and fair dealing. Both Washington and the District of Columbia (plus over 30 other states) have adopted model regulations stating as follows: "An offer of inflation protection which provides for automatic benefit increases shall include an offer of a premium which the insurer expects to remain constant. Such offer shall disclose in a conspicuous manner that the premium may change in the future unless the premium is guaranteed to remain constant." Wash. Admin. Code § 284-54-

- 17 -

270(6); D.C. Mun. Regs. tit. 26-A, § 2624.7. And the policy itself states, "If a provision conflicts with the statutes of the jurisdiction in which the Policy was delivered or issued, it is automatically changed to meet the minimum requirements of the statute." (FAC ¶ 65.) Thus, when an offer of automatic benefit increases does not include the mandatory conspicuous disclosure of floating premiums, the policy itself should be reformed to include a guaranteed level premium consistent with the non-disclosure. In the alternative, Continental's statement in the long-term care brochure that "you will not need to worry about increasing your premium" provides extrinsic evidence as to the nature of the premium on inflation-protected policies. (FAC ¶ 69.)

Continental does not deny that it failed to include a conspicuous disclosure of a floating premium with its offer of automatic benefit increases. Nor does Continental deny that if the contract requires a level premium, Continental has breached that promise. Instead, Continental argues that the D.C. regulation cannot give rise to any contractual obligation because it post-dates the sale of Gunn's certificate. This argument does not avail Continental for several reasons. First, Washington (where Gunn's certificate was sold) adopted the same regulation in the mid-1990s, and it applies to all certificates issued before 2009, including Gunn's, supporting his contract cause of action (still arising under D.C. law). WSR 94-14-100 at 144, 146; Wash. Admin. Code § 284-54-015(4) (chapter applies to all long-term care policies issued before 2009). Second, the D.C. regulation applies because many certificate holders in the same group will have purchased coverage from Continental after 2005.[7] Regardless, Continental's decision to dupe consumers regarding the nature of the premium paid for inflation protection did not suddenly

_____

[7] Plaintiff reserves the right to seek leave to join post-2005 purchasers as plaintiffs in this case as necessary.

become misleading when the D.C. regulation went into effect. Continental's fraudulent and deceptive acts justify reformation of the policy to conform to Gunn's expectancy of a level premium consistent with inflation protection.

Even if the policy did not directly prohibit such increases, the increases still violate the implied covenant of good faith and fair dealing. Continental must not use its discretion to increase premiums in a manner that frustrate Gunn's justified expectations and the purpose of the contract. *Wright v. Howard Univ.*, 60 A.3d 749, 754 (D.C. 2013); *Edmonson v. Popchoi*, 256 P.3d 1223, 1227 (Wash. 2011). Whether Continental's decision to double Gunn's already-doubled premiums defeats the essential purpose and economic value of the automatic benefit increase is not a matter than can be decided on the pleadings, so the motion should be denied on this basis as well.

### 5. Gunn's allegations that Continental breached its inflation protection are consistent with his allegations that Continental breached express terms.

Contrary to what Continental argues, Gunn is entitled to plead (1) that Continental breached the policy by varying premium increases state to state and (2) that Continental breached the policy by increasing premiums for inflation-protected policies. The Federal Rules do not require unconditional consistency between claims. Fed. R. Civ. P. 8(d); 5 Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 1283 (3d ed 2004). The fact that Continental created and breached multiple, overlapping expectancies does not excuse Continental from breaching any one expectancy. As a purchaser of group long-term care insurance, Gunn may enforce Continental's promise and representations that any premium increases, if otherwise permitted under the policy, must apply to policyholders nationwide. And as a purchaser of inflation protection in the form of an automatic benefit increase rider—an attachment to the main policy that alters its terms—Gunn may enforce the expectancy arising from Continental's

- 19 -

misrepresentations and by operation of law that Continental is not permitted to increase his premium at all.

## C.    The D.C. Consumer Protection Procedures Act applies to Gunn's claims because the master policy was delivered in D.C. to an insured located in D.C.

Contrary to what Continental claims, Gunn can sue Continental under the D.C. CPPA because the master policy was delivered to the policyholder (the Federal Judiciary Group Long Term Care Insurance Trust) in the District of Columbia. (FAC ¶¶ 12, 18.) Therefore, District of Columbia law applies. "Under the Restatement (Second) of Conflict of Laws, in the absence of an effective choice-of-law clause, most issues are governed by the state [where] the employer has its principal place of business, and not by the state where the employee received his or her certificate." *Prudential Ins. Co. of Am. v. Friedrich*, 1990 WL 141430, at *1 (N.D. Ill. Sept. 24, 1990); *accord Erickson v. Sentry Life Ins. Co.*, 719 P.2d 160, 162 (Wash. Ct. App. 1986). The rationale behind this rule recognizes that "it is desirable that each individual insured should enjoy the same privileges and protection." *Restatement (Second) of Conflict of Laws* § 192 cmt. h.

The fact that Gunn is not a resident of D.C. does not exclude him from bringing a claim under the CPPA as Continental urges. The CPPA does not exclude nonresident plaintiffs. *Margolis v. U-Haul Int'l, Inc.*, 818 F. Supp. 2d 91, 101 (D.D.C. 2011). And the statute also applies to non-resident merchants engaging in unfair trade practices in D.C. *Id.* To the extent that Gunn purchased a certificate of coverage from Continental through the trust, the D.C. statute covers him as well because it applies to both to any "trade practice" that would "***directly or indirectly***, solicit or offer for or effectuate, a sale, lease or transfer, of consumer goods or services." D.C. Code § 28-3901(a)(6) (emphasis added). Continental marketed and sold the policy to a D.C. resident, namely, the Federal Judiciary Group Long Term Care Insurance Trust, for the benefit of certificate holders located both inside and outside of D.C. Cases cited by

- 20 -

Continental where the transaction has no relation to D.C. are inapposite. *Shaw v. Marriott Int'l Inc.*, 605 F.3d 1039, 1045 (D.C. Cir. 2010) (holding that "nothing related to the dispute between the two occurred in the District of Columbia"); *Aston v. Johnson & Johnson*, 248 F. Supp. 3d 43, 57 n.9 (D.D.C. 2017) (same). Gunn may therefore sue Continental on behalf of the nationwide group under the CPPA.

**D.** **Filed rate and primary jurisdiction doctrines do not bar Gunn's claims because no filed rate prevents Continental from honoring its promises and representations.**

**1.** **Gunn's contract claims address Continental's obligations, not the reasonableness of the rate, so the filed-rate doctrine does not apply.**

Contrary to what Continental argues, the filed-rate doctrine does not bar Gunn's claims because Gunn's claims do not attack any aspect of regulatory review or the reasonableness of rates. Gunn asserts breach of contract and consumer protection claims within the competence of this court. "The filed rate doctrine bars actions that challenge as unreasonable or unlawful the rates charge[d] by a regulated industry." *Beller v. William Penn Life Ins. Co. of N.Y.*, 778 N.Y.S.2d 82, 84-85 (N.Y. App. Div. 2004). The doctrine does not apply where "[t]he plaintiff does not challenge the reasonableness of the maximum rates set forth in the policy" or claim that he "should have been treated differently from any other subscriber." *Id.* at 85. Such claims "are within the conventional competence of judges; adjudication of such claims does not require the unique expertise" of an insurance regulator. *Randleman v. Fid. Nat'l Title Ins. Co.*, 465 F. Supp. 2d 812, 817 (N.D. Ohio 2006). Thus, the doctrine does not bar claims that rate increases breached the contract. *Id.*; *see also Euclid Ins. Agencies, Inc. v. Am. Ass'n of Orthodontists*, 1998 WL 60775, at *4 (N.D. Ill. Feb. 5, 1998) (doctrine does not bar breach-of-contract claims based on insurer's "contractual obligation to adjust rates based on experience and actuarial calculations").

- 21 -

For example, in *Horwitz ex rel. Gilbert v. Bankers Life & Casualty Co.*, the doctrine barred claims that "would require the court to ascertain what would be a reasonable rate absent the alleged fraud," but the insurer defendant conceded that "the filed rate doctrine does not apply to plaintiff's count V breach of contract claim, as count V *focuses on ambiguities in the insurance contract itself and not the validity of the premium rates charged by defendant*." 745 N.E.2d 591, 605-06 n.6 (Ill. App. Ct. 2001) (emphasis added, quotation omitted). The plaintiffs in *Horwitz* were entitled to proceed on their claims that under an ambiguous term in the contract, the insurer was limited to one rate increase per year and had violated that limitation. *Id.* at 605-06. The issue was a contractual one relating to the manner of implementing premium increases, unrelated to the reasonableness of premiums.

Similarly here, Gunn seeks only to enforce his contractual right not to be subject to state-to-state premium increases, as well as his right to a level premium as a purchaser of inflation protection. Neither theory requires any determination of the reasonableness of a given premium or to determine different premiums for different payors. Rather, Gunn seeks to enforce Continental's common obligation to apply a nationwide rate to all. "The filed rate doctrine is inapplicable in this action. Plaintiff[] [is] not challenging the reasonableness of the filed rate" as measured by regulatory standards, "but instead attempt[s] to enforce a contract incorporating a filed [or unfiled] rate," restricting the right of Continental to pursue rate increases for group policies and inflation protected policies. *Randleman*, 465 F. Supp. 2d at 823 (rejecting filed-rate defense).

The filed-rate doctrine is particularly inapt because Gunn's claims are not limited to one state but encompass Continental's duties to the nationwide group. Continental does not identify a filed rate that applies to premium payors nationwide, nor a specific filed rate pertaining to the

- 22 -

automatic benefit increase rider. And while Continental claims that Washington holds

jurisdiction over "Washington-issued policies" (Mot. at 28), there is no such policy here—only

certificates issued under a master policy delivered in D.C. D.C. is the only jurisdiction that even

arguably holds authority to approve a premium for all members of the federal judiciary group

because the master policy was delivered there. *Prudential Ins.*, 1990 WL 141430, at *1 (law of

state where master policy is delivered governs rights of group members); 26-A D.C. Mun. Regs.

§ 2631.1 (filing requirements applicable to both certificates *and policies* issued in the District of

Columbia). Continental has not even cited any D.C. caselaw showing that the doctrine would bar

Gunn's claims under the law of that jurisdiction. *Cf. Hanson v. Acceleration Life Ins. Co.*, No.

CIV A3-97-152, 1999 WL 33283345, at *4 (D.N.D. Mar. 16, 1999) (finding absence of authority

that filed-rate doctrine governs long-term care insurance under state law). "It is neither prudent

nor appropriate for a federal court to impose the filed-rate doctrine on a state which has not

adopted it. Nor should a court stretch or bend a state doctrine to more comfortably fit the

contours of the federal rule." *Clark v. Prudential Ins. Co. of Am.*, CIV. 08-6197 DRD, 2011 WL

940729, at *10 (D.N.J. Mar. 15, 2011).

Regardless, Continental has neither sought nor obtained approval for a premium increase

for the nationwide group in D.C. *Beller*, 778 N.Y.S.2d at 85 (noting that filed-rate doctrine does

not apply where agency approval is not obtained). The reason is obvious: D.C. has approved only

a modest 10% increase on long-term care premiums for D.C. residents. Interest rates and lapse

rates are primary reasons that Continental and the long-term care insurance industry at large have

sought premium increases in recent years. (Dkt. # 35-4, at 45 ("The original pricing assumptions

for claim costs, voluntary termination rates, mortality, and interest varied over time.").) But D.C.

prohibits insurers from seeking premium increases "on the basis that the actuarial assumption for

PERSISTENCY OR LAPSE was not achieved" and increases "on the basis that the actuarial assumption for INTEREST RATE was not achieved." D.C. Ins. Bulletin No. 03-005-PPI, 2003 WL 25279690 (Nov. 24, 2003) (prohibiting rate increases sought). As the D.C. Insurance Commissioner explained, the lapse rate risk "is one the company should bear not the consumer," and "[t]he long-term care insurance product is a long-term product and the policyholders' expectation is that the long-term interest rate risk is built into the premiums being charged." (Ex. A at 11) ("The Company is limiting this rate increase request in order to comply with District of Columbia Bulletin 03-PPI-005-11/24").) Rather than settle for a 10% increase across the group, Continental admits it has gone shopping for the largest increase it can obtain in different states, maximizing what it can extract from the insurance pool by exploiting state-to-state differences. (Mot at 14-15.) The policy does not allow this.

The contract requires Continental to implement any permissible premium increases on a nationwide basis. Even if the filed-rate doctrine were applicable to Gunn's claims, the contract does not incorporate any rate other than a uniform national rate. *Gelfound v. Metlife Ins. Co. of Conn.*, 998 F. Supp. 2d 1356, 1360 (S.D. Fla. 2014) (permitting claims that "allege that the rates have been applied in an incorrect manner"). And while the State of Washington has approved Continental's first step toward a 95% increase in premiums for insureds in that state alone, the Washington Office of the Insurance Commissioner has no authority to approve a nationwide rate. That issue is left to the rights of the parties under the contract, and a federal court sitting in diversity is the appropriate forum to resolve these interstate claims.

No regulatory body compelled Continental to breach the contract by increasing premiums. There was "no statute or case which prohibited or limited [Continental's] ability to fulfill its commitment" respecting rate increases. *Euclid Ins. Agencies*, 1998 WL 60775, at *4

- 24 -

(rejecting filed-rate defense as to rate increases). The choice was Continental's alone. The filed-rate doctrine does not apply, and this Court should adjudicate Gunn's claims of breach.

### 2. Gunn's consumer deception and fraud claims address marketing behavior, not the reasonableness of the rate, so the filed-rate doctrine does not apply.

Likewise, Gunn's consumer deception and fraud claims are not barred by the filed-rate doctrine. The filed-rate doctrine does not apply where the plaintiff raises "challenges to Defendants' alleged misrepresentations, rather than challenges to the approved rate, or challenges to whether the rate is reasonable in light of the statutorily prescribed loss ratios[.]" *Friedman v. AARP, Inc.*, 283 F. Supp. 3d 873, 878 (C.D. Cal. 2018). As one court has explained, claims of deceptive marketing have essentially nothing to do with rate approval and are not subject to the filed-rate bar:

> [S]tate regulatory regimes naturally can only review rates and policies for their objective reasonableness as applied to every payer of premiums within a given jurisdiction. Although premiums already paid may be a tool for measuring damages (i.e., the difference in value between the coverage promised and that actually provided), the Plaintiffs do not challenge the objective reasonableness of a rate structure per se…. Instead the Plaintiffs charge that the Defendants withheld information concerning internal policies which would have some bearing on the Plaintiffs' personal, subjective decision as to how much they were willing to pay and whether they would select one insurance plan over other alternatives. It was this subjective decisionmaking process that the Plaintiffs submit was corrupted by the Defendants' omissions and misrepresentations.

*In re Managed Care Litig.*, 150 F. Supp. 2d 1330, 1344 (S.D. Fla. 2001) (citations omitted). The filed-rate doctrine thus does not apply where plaintiffs "are not challenging the *reasonableness* of [the defendant's] insurance rates" but they instead "challenge an alleged deceptive sales practice." *Zangara v. Travelers Indem. Co. of Am.*, 423 F. Supp. 2d 762, 776 (N.D. Ohio 2006), *vacated on other grounds*, 2006 WL 825231 (N.D. Ohio Mar. 30, 2006).[8]

---

[8] *See also Alexander v. Wash. Mut., Inc.*, No. CIV.A 07-4226, 2008 WL 2600323, at *2 (E.D. Pa. June 30, 2008) ("…filed-rate doctrine bars "direct challenges to the insurance rate structure" but not claims of unfair business practices); *Gipson v. Fleet Mortg. Grp., Inc.*, 232 F. Supp. 2d 691, 707 (S.D. Miss. 2002) (same); *Bhasker v. Kemper Cas. Ins. Co.*, 284 F. Supp. 3d 1191,

Gunn alleges that Continental's marketing materials and policy contain deceptive and false statements and omissions that would mislead a prospective buyer about Continental's ability to raise premiums by different amounts state to state as well as its ability to raise premiums on inflation-protected policies.  (FAC ¶¶ 23-38, 70-78.) The application of the filed-rate doctrine makes no logical sense in this context. Continental presents no basis for this Court to find, at the pleading stage, that any state regulator possessed let alone exercised authority to evaluate Continental's violations of the District of Columbia CPPA in the marketing of the policy 15 years before it filed for the rate increases at issue. *See In re Managed Care Litig.*, 150 F. Supp. 2d at 1344. The filed-rate doctrine therefore does not bar Gunn's consumer protection and fraud claims.

### 3. Cases cited by Continental confirm that the filed-rate doctrine does not bar Gunn's claims.

The filed-rate cases that Continental cites only bolster Plaintiff's position. *Alpert v. Nationstar Mortgage LLC* held that the filed-rate doctrine barred claims "based on allegedly unreasonable rates if those rates were set by the governing regulator[y] agency," that is, it barred claims that rates are "facially unreasonable," but did not bar breach of contract claims that did not address the *reasonableness* of rates.  243 F. Supp. 3d 1176, 1181-1185 (W.D. Wash. 2017). *Heaphy v. State Farm Mutual Automobile Insurance Co.* also limited the doctrine to claims attacking the reasonableness of rates. No. C05-5404-RBL, 2006 WL 278556, at *2 (W.D. Wash. Feb. 6, 2006). In the unpublished decision *Flint v. MetLife Insurance Co. Connecticut*, the

---

1226 (D.N.M. 2018) (same); *Qwest Corp. v. Kelly*, 59 P.3d 789, 801 (Ariz. Ct. App. 2002) (same); *Am. Bankers Ins. Co. of Fla. v. Alexander*, 818 So. 2d 1073, 1084 (Miss. 2001) (collecting cases), *overruled on other grounds by Capital City Ins. Co. v. G.B. "Boots" Smith Corp.*, 889 So. 2d 505, 516 (Miss. 2004); *Hallums v. Infinity Ins. Co.*, 2017 WL 5749748, at *3 (S.D. Fla. June 2, 2017), *report and recommendation adopted*, 2017 WL 4221080 (S.D. Fla. Sept. 22, 2017).

- 26 -

doctrine did not bar claims that MetLife breached the contract by seeking rate increases—it was dismissed on other grounds. 460 F. App'x 483, 486 (6th Cir. 2011). *Richardson v. Standard Guaranty Insurance Co.* confirmed that a plaintiff "may maintain her claim against the defendant insurers based upon their alleged breach of the terms of the policies" and that "[i]t would be illogical to apply the filed rate doctrine to a contract which is not based on a filed rate." 853 A.2d 955, 968-69 (N.J. Super. Ct. App. Div. 2004). Similarly, the Second Circuit in *Fax Telecommunicaciones Inc. v. AT&T* reserved the question whether a filed rate barred disputes over which filed rate actually governs under the contract. 138 F.3d 479, 490 n.8 (2d Cir. 1998). *Cahnmann v. Sprint Corporation*, 961 F. Supp. 1229 (N.D. Ill. 1997), and *Birnbaum v. Sprint Communications Co.*, No. 96-CV-25141, 1996 WL 897326 (E.D.N.Y. Nov. 19, 1996), both address mandatory federal rates for long-distance calling and their preemptive effect rather than insurance policies where state-to-state premium hikes violate the contract. The law in this district is that a filed rate does not bar contract claims attacking an insurer's method of increasing premiums. *Euclid Ins. Agencies*, 1998 WL 60775, at *4.

As to Gunn's consumer protection claims, Gunn does not assert fraud with respect to any published rate that existed at the time he purchased his certificate of coverage—he challenges rate *increases* that came over a decade later. Thus, there is no relevance to cases cited by Continental holding that the filed-rate doctrine barred fraud claims because the consumer contracted with knowledge of the published rate. *See Fax Telecommunicaciones*, 138 F.3d at 490; *Richardson*, 853 A.2d at 968-69; *Cahnmann*, 961 F. Supp. at 1233-34. Similarly, Gunn has not claimed that Continental committed fraud on any ratemaking authority, so his claims are nothing like the fraud claims in *Flint*, 460 F. App'x at 486. And Gunn does not ask this Court to determine "what would be a reasonable rate" as a remedy for his fraud claim, taking it outside

the ambit of *Kutner v. Sprint Communications Co. LP*, 971 F. Supp. 302, 306 (W.D. Tenn. 1997), and *Birnbaum*, 1996 WL 897326, at *5.

Finally, the Washington Supreme Court's decision in *McCarthy Finance, Inc. v. Premera*, 347 P.3d 872 (Wash. 2015), is not binding on this Court because Gunn's claims are governed by D.C. law as already explained. *Prudential Ins.*, 1990 WL 141430, at *1. Regardless, *McCarthy* affirms that "[t]he mere fact that a claim is related to an agency-approved rate is no bar. . . . In most cases, courts must consider CPA [consumer protection statute] claims even when the requested damages are related to agency-approved rates because, to the extent that claimants can prove damages without attacking agency-approved rates, the benefits gained from courts' considering CPA claims outweigh any benefit that would be derived from applying the filed rate doctrine to bar the claims." 347 P.3d at 875. *McCarthy* only barred the claim because the plaintiffs "directly attack[ed] agency-approved rates," seeking a refund of "*excessive overcharges*" and a refund of "the amount of the *excess surplus*"—that is, asserting that the rates themselves were unreasonable relative to the coverage and requiring the court "to determine what health insurance premiums would have been reasonable." *Id* at 874-76. Gunn does not challenge the inherent reasonableness of premiums and seeks no damages relative to reasonableness here.

"[T]he law on the filed rate doctrine is extremely creaky." *Town of Norwood v. New England Power Co.*, 202 F.3d 408, 420 (1st Cir. 2000). It is "plainly a creature of a different time." *Fax Telecommunicaciones*, 138 F.3d at 491. The Court should reject Continental's attempts to misread and contort the doctrine beyond its already questionable scope. *Clark*, 2011 WL 940729, at *10.

- 28 -

4.    **Doctrines of abstention and primary jurisdiction do not prevent this Court from deciding Gunn's claims.**

The doctrine of primary jurisdiction does not bar Gunn's claims or require that they be referred to the Washington Office of the Insurance Commissioner, as Continental requests. There is "no fixed formula" requiring the primary jurisdiction doctrine to apply, but it applies only where an agency holds special expertise over the matter at issue. *See Zangara*, 423 F. Supp. 2d at 776. Here, Gunn's claims clearly lie within the competence of this Court rather than the agency. The issue in this lawsuit is not the reasonableness of Continental's rates but the legality of Continental's actions in misrepresenting the possibility of premium increases and its failure to adhere to contractual limitations on premium increases. *See id.* (finding that insurance regulator lacked exclusive jurisdiction over similar claims); *Randleman*, 465 F. Supp. 2d at 817. Like contract and fraud claims, consumer protection statutes also lie "within the conventional competence of the courts" and are not subject to referral to insurance regulators. *Friedman*, 283 F. Supp. 3d at 879 (quotation omitted). And the scope of Gunn's claims exceeds the expertise of a regulator in Washington because it affects the rights of policyholders across state lines.

Similarly, abstention under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), is not warranted. Plaintiff asserts breach of contract, fraud, and consumer protection claims that federal courts routinely hear and decide. Contrary to what Continental argues, Gunn's policy is not governed solely by the Washington insurance code and related regulations; the group policy governing Gunn's rights was delivered in the District of Columbia and is subject to D.C. law. *Prudential Ins.*, 1990 WL 141430, at *1. Continental cites no state authority indicating "a desire to create special state forums to adjudicate the issues presented"—namely, disputes over the language of contract and marketing materials implicating the rights of federal judiciary group insureds across the country. Rather, the fact that Gunn's claims require the Court to consider the

010738-11 1056933 V1

law and interests of multiple states makes these claims particularly well suited to the federal forum.

**E.     The economic loss rule does not bar Gunn's fraud claims.**

Continental is wrong to argue that the economic loss rule bars Gunn's claims under Washington law. In the first place, D.C. law, not Washington law, governs Gunn's claims. The economic loss rule there does not bar fraud claims relating to consumer transactions, and Continental does not argue otherwise. *E.g.*, *Himmelstein v. Comcast of the Dist., L.L.C.*, 908 F. Supp. 2d 49, 58 (D.D.C. 2012) (applying economic loss rule in negligence setting only). And even if Washington law did apply, the doctrine still does not bar claims for fraud in consumer transactions. *Elcon Const., Inc. v. E. Wash. Univ.*, 273 P.3d 965, 970 (Wash. 2012); *Polygon Nw. Co. LLC v. Louisiana-Pacific Corp.*, No. C11-620, 2012 WL 2504873, at *6 (W.D. Wash. June 28, 2012).

**F.     There is no basis to dismiss Gunn's claims for declaratory and injunctive relief.**

Continental requests dismissal of Gunn's claims for declaratory and injunctive relief as contingent upon his claims of breach of contract, fraud, and consumer deception. Because, as outlined above, the Court should not dismiss those claims, Gunn's claims for declaratory and injunctive relief should stand. Continental admits that future rate increases are imminent. (Mot. at 5.)  Gunn's claims for declaratory and injunctive relief survive for the additional reason that even if the filed-rate doctrine were to bar other claims (which it does not), the doctrine generally does not bar claims for declaratory and injunctive relief. *E.g.*, *In re Pa. Title Ins. Antitrust Litig.*, 648 F. Supp. 2d 663, 686 (E.D. Pa. 2009). If the doctrine were to apply to bar claims for monetary damages, past increases would amount to irreparable harm, Gunn would have no adequate remedy at law, and an injunction against future rate increases would be appropriate.

- 30 -

## IV.    CONCLUSION

For the foregoing reasons, Continental's Combined Motion to Dismiss or Stay should be denied.


DATED: September 13, 2018                    Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/ Steve W. Berman*
    Steve W. Berman
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Robert B. Carey (*pro hac vice* pending)
John M. DeStefano (*pro hac vice* pending)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, AZ 85003
Telephone: (602) 840-5900
rob@hbsslaw.com
johnd@hbsslaw.com

Elizabeth A. Fegan
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4960
Facsimile: (708) 628-4950
beth@hbsslaw.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed electronically via the Court's ECF system, on September 13, 2018. Notice of electronic filing will be sent to all parties by operation of the Court's electronic filing system.

DATED: September 13, 2018                    <u>/s/ *Steve Berman*         </u>
                                             Steve Berman

010738-11 1056933 V1