# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| DAVID SIEVING, individually and on behalf of all others similarly situated, | CLASS ACTION |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | |
| CONTINENTAL CASUALTY COMPANY, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

## TABLE OF CONTENTS

**Page**

I.     NATURE OF THE CASE .......................................................................................1

II.    JURISDICTION .............................................................................................3

III.   VENUE ..........................................................................................................3

IV.   PARTIES .......................................................................................................4

V.     FACTUAL ALLEGATIONS ...........................................................................4

A.    Continental promises that any future rate increases would be uniform across all premium classes. ..................................................................................................4

B.    Continental seeks and implements premium increases that vary within the same premium class.  12

C.    Continental promises inflation protection, but misleads its insureds about the nature of that protection and future premium increases. ................................................15

VI.   CLASS ACTION ALLEGATIONS ...............................................................22

VII.  CAUSES OF ACTION ..................................................................................25

     FIRST CAUSE OF ACTION  (BREACH OF CONTRACT)...........................................25

     SECOND CAUSE OF ACTION  (BREACH OF THE IMPLIED COVENANT  OF GOOD FAITH AND FAIR DEALING) ...........................................................26

     THIRD CAUSE OF ACTION  (VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE PRACTICES ACT, 815 ILL. COMP. STAT. ANN. 505, *ET SEQ.*).......................................................................................28

     FOURTH CAUSE OF ACTION  (FRAUD) ..................................................31

     FIFTH CAUSE OF ACTION  (FRAUDULENT CONCEALMENT)...........................33

     SIXTH CAUSE OF ACTION  (DECLARATORY AND INJUNCTIVE RELIEF) ........35

PRAYER FOR RELIEF ...............................................................................................36

JURY TRIAL DEMAND .............................................................................................37

## I.      NATURE OF THE CASE

1.      Plaintiff purchased a certificate for long-term care insurance offered to those covered by the Employees Long Term Care Insurance Trust's long-term care group policy. Long-term care insurance covers the costs of assistance with the activities of daily life due to disability or old age, costs not generally covered by health insurance. Insurers selling coverage tout the benefits of purchasing this coverage before reaching old age to guarantee the lowest possible premiums. When an insurance company markets and sells coverage for long-term care, it must honor promises made in the policy documents about future premium increases and not misrepresent how premiums will be increased.

2.      When marketing materials and the policy state that premiums will not be increased unless they are changed for everyone in the same age group, an insurance company must not increase premiums at different times, and in different amounts, for insureds within the same age group. Similarly, an insurer must not promise that it will change premiums only by age group or premium class when it knows that it will vary future premium increases state-to-state.

3.      When an insurer offers inflation protection in the form of an automatic annual benefit increase and charges more than double the standard premium for it, the insurer must disclose that the premium may still increase further even if inflation protection is purchased. A consumer paying more than double the normal premium for inflation protection would naturally understand and expect to be protected against future premium increases due to rising costs of care, changing interest rates, and other long-term inflation-related factors. Given this high risk of confusion, insurance regulations require insurers to disclose whether premiums might change even though inflation protection is purchased. If no disclosure is made, the policy is deemed to include a guaranteed level premium.

4.      Long-term care coverage buyers are buying long-term financial security, and they count on their insurer to accurately describe the process and the commitments it makes and to honor its promises made in touting the policy and in the contract language.

5.      Continental Casualty Company ("Continental") has broken these rules. While its marketing materials and policy promise that insureds will never be singled out for a rate increase, and that premiums will not change unless they change for all insureds in the same age group, Continental has done the opposite. Continental has imposed rate increases at different times and in different amounts from one state to the next. As a result, insureds within the same age group find themselves paying completely different premiums from one another, even though they are members of the same age group, premium class, and risk pool. Continental's decisions to seek and implement rate increases that vary from one state to the next blatantly violate its promises of uniform premium increases across the Class. Further, Continental knew its promises of uniform rate increases were false because state regulatory requirements vary. Plaintiff's rates have increased by 95.5%, an increase far greater than rates charged insureds in other states.

6.      Continental also misstated the terms of inflation protection, failing to disclose that even if the insured purchases inflation protection in the form of an automatic benefit increase—a feature that can cost 2.5 times the standard premium—the insured could still face premium increases in the future. Indeed, Continental states in its marketing brochure that if the inflation protection option with the automatic benefit increase is purchased, there will be "no corresponding annual increase in premium." Even though a purchaser of inflation protection has a reasonable and enforceable expectation that premiums will not increase, Continental has nonetheless increased premiums on policies where inflation protection was purchased. Plaintiff's

rates will increase by over 95% over two years, effectively doubling a premium that was already more than doubled to protect him "against the rising costs of long-term care."

7.  Plaintiff brings this class action on behalf of all those insured under Continental's group long-term care insurance policies delivered in Illinois, who were promised in policies, policy certificates, and/or marketing materials that their premiums would not be increased unless they were increased for all members of the same age group or premium class. Plaintiff seeks rescission of his insurance contracts and restoration of premiums paid or, in the alternative, declaratory and injunctive relief, disgorgement of ill-gotten gains, and compensatory, statutory, and punitive damages.

## II.   JURISDICTION

8.  This Court has jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest, and minimal diversity exists. Plaintiff is a citizen of California and Continental is a citizen of Illinois (where it has its principal place of business) and Delaware (where it is incorporated).

9.  This Court has personal jurisdiction over Continental because Continental has its principal place of business in Chicago, Illinois and Continental issued master group long-term care insurance policies to group policyholders located in Illinois. This Court has personal jurisdiction over Plaintiff because Plaintiff consents to this Court's jurisdiction.

## III.   VENUE

10.  Venue is proper in this District under 28 U.S.C. § 1391 because this is the district in which Continental has its principal place of business and in which Continental engineered the marketing materials, insurance policies, and premium increases giving rise to the cause of action.

## IV. PARTIES

11.     Plaintiff David Sieving is a citizen of the State of California and a resident of San Diego, California.

12.     At all times pertinent, Plaintiff Sieving was insured under a group long-term care policy issued and delivered to the Employees Long Term Care Insurance Trust ("Employees Trust") located in Illinois. The Trustee of the Employees Trust is the Bank of Edwardsville. The Northrop Grumman Federal Credit Union ("NGFCU") Space Systems Division was the Participant Group through which Mr. Sieving purchased his certificate. When he purchased his long-term care policy certificate from Continental, Plaintiff Sieving was a resident of the State of California.

13.     Continental is a Delaware corporation with its principal place of business in Chicago, Illinois.

## V. FACTUAL ALLEGATIONS

**A.     Continental promises that any future rate increases would be uniform across all premium classes.**

14.     Long-term care insurance pays for a variety of services for people who are unable to care for themselves. Long-term care services may include assistance in a home, adult daycare center, an assisted living facility, or skilled nursing home. Long-term care insurance is different from long-term disability insurance, which provides you with income protection in the event that you become disabled. Premiums for long-term care coverage are generally set at the same level for a given age group. Purchasers of the coverage are assured that by purchasing long-term care coverage at an early age, they can secure a more favorable premium than they could otherwise obtain over the coming years. Long-term care coverage promises the peace of mind that by

paying a fair and reasonable premium in the long run, insureds will be protected against the significant expenses of assisted living and other long-term care if and when they need it.

15. The experience of the long-term care insurance industry has not matched these expectations. Insureds lured in by the promise of affordable premiums early in life have faced massive premium increases, with rates sometimes even doubling in a few years. Rather than obtaining peace of mind, these insureds suffer with the uncertainty of future premium increases, the risk of long-term care expenses that could arise, and the unavailability of affordable coverage alternatives now that they have reached a more advanced age.

16. These drastic increases are no accident. Insurers disappointed in the performance of their long-term care risk pools have sought to take out their losses on their insureds. And as the facts of this case demonstrate, insurers are determined to protect their bottom line, regardless of their promises or the impact on an aging population that relied upon Continental's promises of financial stability.

17. Continental is a publicly held financial corporation that issued long-term care insurance policies nationwide.

18. Continental issued and delivered group long-term care policy number 9774 ("the Policy") to the Employees Trust, located in Illinois, with a policy effective date of September 1, 1989. Delivery of an insurance policy to the policyholder occurs when the underwriting process is complete and the actual policy is given to the policyholder, confirming coverage.

19. Negotiations before issuance of the Policy were conducted between Continental and the Employees Trust, located in Illinois.

20. Plaintiff Sieving purchased a certificate of coverage under the Policy with a coverage effective date of July 1, 2003. Sieving had access to coverage under the Policy because

at the time he enrolled he was employed by Northrop Grumman Space Systems Division and thus had access to insurance programs offered through the NGFCU, a participating organization under the Policy.

21.     Continental underwrote and established the Policy form, premium rates, and actuarial risk pool for employees of Northrop Grumman nationwide, as well as other participating groups under the Policy, not limited or classified by their various locations in specific states.

22.     Among other benefits, the Policy provided Mr. Sieving with a daily nursing home benefit amount of $250, an Alternate Care Facility benefit of $250, and a Community Based Care benefit of $150. It also provided inflation protection in the form of a "Lifetime Compounded Automatic Benefit Increase" of 5% per year.

23.     Under the heading **PREMIUM**, the Policy certificate states:

> We cannot change the Insured's premiums because of age or health. We can, however, change the Insured's premiums based on his or her premium class, but only if We change the premiums for all other Insureds in the same premium class. A change may be made, as provided in the following paragraph, on any Premium Due Date after the end of the Premium Rate Guarantee Period. The Premium Rate Guarantee Period starts on the Participating Employer's Effective Date. The length of this period is stated in the Schedule of the Master Application.

24.     The same language appears under the heading **PREMIUM** in the group policy.

25.     According to this language, Continental promises its insureds that any premium increases will be made not just for the insured or a group of insureds within a premium class, but for "all other insureds in the same premium class."

26.     The Policy contains no additional definition of "premium class." According to the plain meaning of the Policy and the reasonable understanding and expectations of an insured, the "premium class" refers to the nationwide pool of insureds under the group insurance plan within a given age group. As shown below, the rate schedules distributed to purchasers of the coverage

showed rates that varied by age and benefit level only, and not by residence of the insured or place of purchase.

27.    Similarly, according to the plain meaning of the Policy and the reasonable understanding and expectations of an insured, the quoted Policy certificate language means that if the premium changes for one insured, the same change will apply to the premiums of all members of the premium class. This language assures consumers that their rates will at least remain stable relative to the rates paid by other members of the premium class—which depend only upon age or benefit level, as shown by the rate schedules—so they will not be required to bear a disproportionate cost of coverage for the premium class.

28.    Continental issued similar long-term care insurance policies and policy certificates using the same or similar language to insureds throughout the country under policies issued to long-term care group policyholders in Illinois, like the Employees Trust.

29.    When it marketed the Policies to consumers, Continental stated:

LEVEL PREMIUM RATES DO NOT INCREASE JUST BECAUSE YOU GROW OLDER

Since your premium is based on a fixed daily benefit and on your age at the time you apply, CNA can predict the appropriate premium to charge you. As a result, premiums are expected to remain level over your lifetime. CNA reserves the right to change premiums for the entire plan if necessary based on our experience, but you can never be singled out for a rate increase because you get older, become ill, or file claims. If you elect to increase your benefits with the Future Purchase Option (FPO), your premiums will be increased at that time to pay for the additional benefits.

30.    Plaintiff reviewed and relied upon this brochure as well as other marketing and policy materials at the time that he purchased long-term care coverage under the Employee Trust policy.

31.     Continental distributed similar brochures containing the same or similar marketing language to purchasers of long-term care insurance throughout the country under policies issued to long-term care group policyholders in Illinois.

32.     Within the brochure, Continental assured Plaintiff and class members that the Policy would provide long-term stability and that Plaintiff and other Class Members would not be subject to disparate or discriminatory rate increases:

> The younger you are when your coverage begins, the lower your premiums will be for the duration of your participation in the plan. That's because once you're in the plan, your rates don't increase just because you get older. So it makes sense to buy coverage now when you can set your premiums at the lowest possible rate.

> Consider the difference in the total premiums paid and the benefits available over time if a person buys coverage at age 40 rather than waiting until age 60 or age 70 to enroll in the plan.

33.     The brochure illustrated the supposed value of early purchase with this chart:

| Plan B - Standard Lifetime Maximum With ABI | | | |
|---|---|---|---|
| Age Entering Plan | Total Years of Coverage To Age 90 ($100 Plan) | Total Premiums Paid To Age 90 ($100 Plan) | Available Benefits At Age 90 With ABI Option |
| 40 | 50 | $15,186 | $1,092,230 |
| 50 | 40 | $17,030 | $ 670,540 |
| 60 | 30 | $27,000 | $ 411,660 |
| 70 | 20 | $37,476 | $ 252,720 |

| Plan B - High Option Lifetime Maximum With ABI | | | |
|---|---|---|---|
| Age Entering Plan | Total Years of Coverage To Age 90 ($100 Plan) | Total Premiums Paid To Age 90 ($100 Plan) | Available Benefits At Age 90 With ABI Option |
| 40 | 50 | $22,806 | $2,184,460 |
| 50 | 40 | $26,362 | $1,341,080 |
| 60 | 30 | $37,217 | $ 823,320 |
| 70 | 20 | $53,280 | $ 505,440 |

34.     In the Outline of Coverage, which is part of the brochure, it contains the following statement:

> OUR RIGHT TO CHANGE THE PREMIUM. Your premium is based on your age on your application date. Your premium will not increase because you grow older. It will remain the same unless the rates are increased for everyone in your age group; you cannot be singled out for a rate increase for any reason.

35.     Like the language in the Policy certificate, this language in the brochure would lead a reasonable purchaser of long-term care insurance to believe that if premiums increase, they are being increased by the same amount for everyone who bought coverage at the same age

in the nationwide insurance pool. The language suggests that rates will not change unless they change for "everyone in your age group"—not by residence of the insured or place of purchase. A reasonable purchaser of long-term care insurance would naturally understand and deem it highly material that he or she would not be forced to bear a disproportionate share of the overall premium expense for the risk pool in the form of a premium increase that affects only a subset of the risk pool.

36.     The term "age group" is not defined elsewhere in the brochure or policy. According to the plain language of this term and the reasonable expectations and understanding of an insured, "age group" refers to all insureds who bought coverage at the same age in the nationwide insurance pool.

37.     The brochure contains tables of monthly and biweekly premium rates as follows:

**Premium Chart A**
**Inflation Protection Plan A**
**Future Purchase Option**
**Monthly Premiums Per Person**

| AGE | Standard Lifetime Maximum | | | High Option Lifetime Maximum | | |
|---|---|---|---|---|---|---|
| | $100/DAY | $125/DAY | $150/DAY | $100/DAY | $125/DAY | $150/DAY |
| 18-24 | $4.73 | $5.91 | $7.09 | $6.30 | $7.88 | $9.46 |
| 25 | 5.14 | 6.42 | 7.71 | 7.00 | 8.75 | 10.50 |
| 26 | 5.30 | 6.63 | 7.95 | 7.28 | 9.10 | 10.91 |
| 27 | 5.48 | 6.85 | 8.22 | 7.58 | 9.48 | 11.37 |
| 28 | 5.67 | 7.09 | 8.50 | 7.91 | 9.88 | 11.86 |
| 29 | 5.86 | 7.33 | 8.79 | 8.24 | 10.30 | 12.36 |
| 30 | 6.07 | 7.59 | 9.10 | 8.61 | 10.76 | 12.91 |
| 31 | 6.32 | 7.89 | 9.47 | 9.03 | 11.29 | 13.54 |
| 32 | 6.60 | 8.24 | 9.89 | 9.50 | 11.88 | 14.25 |
| 33 | 6.93 | 8.67 | 10.40 | 10.05 | 12.56 | 15.07 |
| 34 | 7.29 | 9.11 | 10.94 | 10.64 | 13.30 | 15.96 |
| 35 | 7.69 | 9.61 | 11.53 | 11.28 | 14.10 | 16.92 |
| 36 | 8.13 | 10.16 | 12.19 | 11.98 | 14.98 | 17.97 |
| 37 | 8.61 | 10.77 | 12.92 | 12.76 | 15.95 | 19.15 |
| 38 | 9.14 | 11.42 | 13.71 | 13.61 | 17.01 | 20.41 |
| 39 | 9.70 | 12.13 | 14.55 | 14.52 | 18.14 | 21.77 |
| 40 | 10.00 | 12.50 | 15.00 | 15.02 | 18.78 | 22.53 |
| 41 | 10.44 | 13.05 | 15.66 | 15.73 | 19.66 | 23.60 |
| 42 | 10.91 | 13.64 | 16.37 | 16.50 | 20.62 | 24.75 |
| 43 | 11.47 | 14.34 | 17.21 | 17.39 | 21.73 | 26.08 |
| 44 | 12.12 | 15.15 | 18.18 | 18.41 | 23.01 | 27.62 |
| 45 | 12.91 | 16.13 | 19.36 | 19.63 | 24.54 | 29.45 |
| 46 | 13.31 | 16.64 | 19.97 | 20.29 | 25.36 | 30.43 |
| 47 | 14.18 | 17.72 | 21.27 | 21.63 | 27.04 | 32.45 |
| 48 | 15.12 | 18.90 | 22.69 | 23.17 | 28.96 | 34.76 |
| 49 | 16.11 | 20.14 | 24.17 | 24.84 | 31.05 | 37.27 |
| 50 | 17.22 | 21.53 | 25.83 | 26.66 | 33.33 | 39.99 |
| 51 | 18.66 | 23.32 | 27.98 | 28.84 | 36.05 | 43.26 |
| 52 | 19.90 | 24.87 | 29.84 | 30.45 | 38.07 | 45.68 |
| 53 | 21.94 | 27.43 | 32.92 | 32.92 | 41.15 | 49.38 |
| 54 | 23.97 | 29.96 | 35.95 | 35.02 | 43.77 | 52.53 |
| 55 | 26.47 | 33.08 | 39.70 | 37.66 | 47.07 | 56.49 |
| 56 | 29.32 | 36.65 | 43.98 | 40.84 | 51.06 | 61.27 |
| 57 | 32.22 | 40.27 | 48.33 | 44.34 | 55.43 | 66.52 |
| 58 | 35.53 | 44.42 | 53.30 | 48.75 | 60.94 | 73.13 |
| 59 | 38.78 | 48.48 | 58.17 | 53.28 | 66.60 | 79.92 |
| 60 | 42.34 | 52.92 | 63.51 | 58.36 | 72.95 | 87.54 |
| 61 | 46.06 | 57.58 | 69.09 | 63.74 | 79.67 | 95.61 |
| 62 | 49.51 | 61.89 | 74.27 | 68.73 | 85.91 | 103.10 |
| 63 | 53.79 | 67.24 | 80.69 | 74.86 | 93.57 | 112.28 |
| 64 | 57.54 | 71.93 | 86.31 | 80.27 | 100.34 | 120.41 |
| 65 | 62.20 | 77.75 | 93.29 | 87.00 | 108.75 | 130.50 |

**Premium Chart B**
**Inflation Protection Plan B**
**Automatic Benefit Increase Option**
**Monthly Premiums Per Person**

| AGE | Standard Lifetime Maximum | | | High Option Lifetime Maximum | | |
|---|---|---|---|---|---|---|
| | $100/DAY | $125/DAY | $150/DAY | $100/DAY | $125/DAY | $150/DAY |
| 18-24 | $13.50 | $16.88 | $20.25 | $18.01 | $22.51 | $27.02 |
| 25 | 14.68 | 18.35 | 22.02 | 20.00 | 25.00 | 30.00 |
| 26 | 15.15 | 18.93 | 22.72 | 20.79 | 25.99 | 31.19 |
| 27 | 15.66 | 19.57 | 23.48 | 21.66 | 27.08 | 32.50 |
| 28 | 16.17 | 20.21 | 24.25 | 22.54 | 28.18 | 33.81 |
| 29 | 16.67 | 20.83 | 25.00 | 23.44 | 29.29 | 35.15 |
| 30 | 17.20 | 21.50 | 25.80 | 24.39 | 30.49 | 36.59 |
| 31 | 17.83 | 22.29 | 26.74 | 25.49 | 31.86 | 38.23 |
| 32 | 18.53 | 23.16 | 27.80 | 26.69 | 33.36 | 40.04 |
| 33 | 19.39 | 24.24 | 29.09 | 28.10 | 35.13 | 42.16 |
| 34 | 20.31 | 25.39 | 30.46 | 29.63 | 37.04 | 44.45 |
| 35 | 21.30 | 26.62 | 31.95 | 31.24 | 39.06 | 46.87 |
| 36 | 22.34 | 27.92 | 33.50 | 32.93 | 41.16 | 49.39 |
| 37 | 23.38 | 29.22 | 35.07 | 34.64 | 43.31 | 51.97 |
| 38 | 24.34 | 30.43 | 36.51 | 36.24 | 45.30 | 54.36 |
| 39 | 25.24 | 31.55 | 37.86 | 37.75 | 47.19 | 56.63 |
| 40 | 25.31 | 31.64 | 37.96 | 38.01 | 47.51 | 57.02 |
| 41 | 25.68 | 32.10 | 38.52 | 38.70 | 48.37 | 58.05 |
| 42 | 26.16 | 32.70 | 39.23 | 39.55 | 49.44 | 59.33 |
| 43 | 26.84 | 33.55 | 40.26 | 40.69 | 50.86 | 61.03 |
| 44 | 27.69 | 34.61 | 41.54 | 42.07 | 52.58 | 63.10 |
| 45 | 28.81 | 36.01 | 43.22 | 43.83 | 54.79 | 65.75 |
| 46 | 29.09 | 36.36 | 43.63 | 44.32 | 55.40 | 66.49 |
| 47 | 30.38 | 37.98 | 45.57 | 46.36 | 57.95 | 69.53 |
| 48 | 31.90 | 39.88 | 47.86 | 48.88 | 61.10 | 73.32 |
| 49 | 33.56 | 41.95 | 50.34 | 51.75 | 64.58 | 77.62 |
| 50 | 35.48 | 44.35 | 53.22 | 54.92 | 68.65 | 82.39 |
| 51 | 38.02 | 47.53 | 57.03 | 58.78 | 73.47 | 88.17 |
| 52 | 40.07 | 50.09 | 60.11 | 61.34 | 76.68 | 92.01 |
| 53 | 43.64 | 54.55 | 65.46 | 65.46 | 81.83 | 98.19 |
| 54 | 47.07 | 58.84 | 70.60 | 68.77 | 85.96 | 103.15 |
| 55 | 51.30 | 64.12 | 76.94 | 72.98 | 91.23 | 109.48 |
| 56 | 56.02 | 70.02 | 84.03 | 78.03 | 97.54 | 117.05 |
| 57 | 60.63 | 75.79 | 90.94 | 83.45 | 104.31 | 125.18 |
| 58 | 65.65 | 82.06 | 98.47 | 90.08 | 112.60 | 135.12 |
| 59 | 70.18 | 87.72 | 105.26 | 96.42 | 120.52 | 144.63 |
| 60 | 75.00 | 93.75 | 112.50 | 103.38 | 129.23 | 155.07 |
| 61 | 80.02 | 100.02 | 120.02 | 110.72 | 138.40 | 166.08 |
| 62 | 84.64 | 105.80 | 126.96 | 117.50 | 146.87 | 176.25 |
| 63 | 91.04 | 113.80 | 136.56 | 126.68 | 158.36 | 190.03 |
| 64 | 96.83 | 121.04 | 145.25 | 135.09 | 168.86 | 202.63 |
| 65 | 104.25 | 130.32 | 156.38 | 145.83 | 182.29 | 218.75 |

For $175 per day rates, multiply the $100 rates by 1.75. For $200 per day rates, multiply the $100 rates by 2.0. For $225 per day rates, multiply the $100 rates by 2.25. For $250 per day rates, multiply the $100 rates by 2.5. Please call the Plan Administrator toll-free at 1-800-603-7999 for further information or Plan C Rates.

**Premium Chart A**
**Inflation Protection Plan A**
**Future Purchase Option**
**Monthly Premiums Per Person**

| AGE | Standard Lifetime Maximum | | | High Option Lifetime Maximum | | |
|---|---|---|---|---|---|---|
| | $100/ DAY | $125/ DAY | $150/ DAY | $100/ DAY | $125/ DAY | $150/ DAY |
| 66 | $67.14 | $83.93 | $100.71 | $94.20 | $117.75 | $141.30 |
| 67 | 73.63 | 92.04 | 110.45 | 103.64 | 129.55 | 155.47 |
| 68 | 80.82 | 101.03 | 121.23 | 114.16 | 142.70 | 171.24 |
| 69 | 89.03 | 111.29 | 133.54 | 126.18 | 157.73 | 189.27 |
| 70 | 98.06 | 122.58 | 147.09 | 139.42 | 174.27 | 209.12 |
| 71 | 108.58 | 135.73 | 162.87 | 154.79 | 193.49 | 232.19 |
| 72 | 120.68 | 150.85 | 181.02 | 172.42 | 215.52 | 258.62 |
| 73 | 134.77 | 168.47 | 202.16 | 192.91 | 241.14 | 289.37 |
| 74 | 150.66 | 188.32 | 225.99 | 215.98 | 269.98 | 323.98 |
| 75 | 168.18 | 210.22 | 252.27 | 241.39 | 301.74 | 362.09 |
| 76 | 187.62 | 234.52 | 281.42 | 269.49 | 336.86 | 404.23 |
| 77 | 208.29 | 260.36 | 312.43 | 299.28 | 374.10 | 448.92 |
| 78 | 230.03 | 287.54 | 345.05 | 330.51 | 413.14 | 495.77 |
| 79 | 253.32 | 316.66 | 379.99 | 363.90 | 454.87 | 545.85 |
| 80 | 277.67 | 347.09 | 416.50 | 398.73 | 498.41 | 598.09 |
| 81 | 303.62 | 379.52 | 455.42 | 435.80 | 544.75 | 653.70 |
| 82 | 330.93 | 413.66 | 496.39 | 474.76 | 593.44 | 712.13 |
| 83 | 360.32 | 450.40 | 540.48 | 516.66 | 645.82 | 774.99 |
| 84 | 392.72 | 490.90 | 589.08 | 562.84 | 703.55 | 844.25 |
| 85 | 427.60 | 534.50 | 641.40 | 612.51 | 765.64 | 918.76 |
| 86 | 466.05 | 582.56 | 699.08 | 667.25 | 834.06 | 1,000.87 |
| 87 | 507.43 | 634.29 | 761.15 | 726.13 | 907.66 | 1,089.19 |
| 88 | 551.36 | 689.20 | 827.04 | 788.59 | 985.74 | 1,182.89 |
| 89 | 599.09 | 748.87 | 898.64 | 856.43 | 1,070.54 | 1,284.65 |
| 90 | 650.96 | 813.70 | 976.44 | 930.11 | 1,162.64 | 1,395.17 |

**Premium Chart B**
**Inflation Protection Plan B**
**Automatic Benefit Increase Option**
**Monthly Premiums Per Person**

| AGE | Standard Lifetime Maximum | | | High Option Lifetime Maximum | | |
|---|---|---|---|---|---|---|
| | $100/ DAY | $125/ DAY | $150/ DAY | $100/ DAY | $125/ DAY | $150/ DAY |
| 66 | $112.10 | $140.12 | $168.14 | $157.27 | $196.59 | $235.91 |
| 67 | 122.02 | 152.52 | 183.03 | 171.75 | 214.69 | 257.63 |
| 68 | 132.40 | 165.49 | 198.59 | 187.01 | 233.76 | 280.51 |
| 69 | 143.89 | 179.86 | 215.83 | 203.93 | 254.91 | 305.90 |
| 70 | 156.15 | 195.19 | 234.23 | 222.00 | 277.51 | 333.01 |
| 71 | 170.11 | 212.64 | 255.17 | 242.51 | 303.13 | 363.76 |
| 72 | 186.08 | 232.59 | 279.11 | 265.85 | 332.31 | 398.77 |
| 73 | 204.21 | 255.27 | 306.32 | 292.31 | 365.39 | 438.46 |
| 74 | 223.69 | 279.62 | 335.54 | 320.69 | 400.86 | 481.03 |
| 75 | 244.74 | 305.92 | 367.11 | 351.28 | 439.10 | 526.92 |
| 76 | 268.02 | 335.03 | 402.03 | 384.98 | 481.23 | 577.47 |
| 77 | 293.39 | 366.74 | 440.09 | 421.55 | 526.94 | 632.33 |
| 78 | 320.95 | 401.19 | 481.43 | 461.14 | 576.43 | 691.72 |
| 79 | 351.28 | 439.10 | 526.92 | 504.61 | 630.76 | 756.91 |
| 80 | 383.71 | 479.64 | 575.57 | 551.01 | 688.76 | 826.51 |
| 81 | 419.57 | 524.46 | 629.35 | 602.23 | 752.79 | 903.35 |
| 82 | 457.31 | 571.64 | 685.96 | 656.07 | 820.08 | 984.10 |
| 83 | 497.92 | 622.40 | 746.89 | 713.97 | 892.46 | 1,070.96 |
| 84 | 542.71 | 678.38 | 814.06 | 777.79 | 972.23 | 1,166.68 |
| 85 | 586.42 | 733.03 | 879.64 | 840.01 | 1,050.01 | 1,260.02 |
| 86 | 630.28 | 787.85 | 945.42 | 902.37 | 1,127.97 | 1,353.56 |
| 87 | 676.58 | 845.72 | 1,014.87 | 968.17 | 1,210.21 | 1,452.26 |
| 88 | 724.64 | 905.81 | 1,086.97 | 1,036.44 | 1,295.54 | 1,554.65 |
| 89 | 775.97 | 969.96 | 1,163.96 | 1,109.29 | 1,386.61 | 1,663.93 |
| 90 | 830.75 | 1,038.44 | 1,246.13 | 1,187.00 | 1,483.75 | 1,780.50 |

For $175 per day rates, multiply the $100 rates by 1.75. For $200 per day rates, multiply the $100 rates by 2.0.
For $225 per day rates, multiply the $100 rates by 2.25. For $250 per day rates, multiply the $100 rates by 2.5.
Please call the Plan Administrator toll-free at 1-800-603-7999 for further information or Plan C Rates.

38.     These tables define premium classes by age and benefit level. A reasonable insured would understand from the brochure that these rates govern policies for all insureds in a given premium class or age group nationwide, without any differences based upon state of residency. A reasonable insured would further understand that he or she was part of a nationwide premium class.

**B.     Continental seeks and implements premium increases that vary within the same premium class.**

39.     Originally, the Plaintiff's certificate carried a monthly premium of $124.48, or annual premium of $1,493.76.

40.     On September 1, 2016 Continental wrote to Plaintiff stating that his premium would increase by 95.5% in a phased manner with a 70% increase occurring as of November 1, 2016, and a 15% increase occurring on November 1, 2017. The letter stated that the new monthly premium payment after the 70% increase would be $211.62. The new monthly premium after the 2017 increase was $243.36.

41.     The letter further stated that Mr. Sieving had three options after the premium increase: (1) continue the current coverage by paying the new premium; (2) reduce coverage to help "minimize the effect" of the premium increase; or (3) execute a non-forfeiture benefit, discontinuing premium payments and accepting a drastically reduced maximum benefit under the certificate. None of these options were acceptable to Mr. Sieving, yet he decided to pay the new increased premium in order to keep his current coverage in place.

42.     In the September 1, 2016 letter, over two decades after Continental started issuing certificates to insureds under the Policies, Continental disclosed for the first time that the premium increase is not uniform for everyone in the same age group or premium class:

6. **Will the premium rate increase be effective for everyone?**
Since Continental Casualty Company (CCC) must receive approval or authorization from certain states prior to implementing an increase, it is possible that these states will not approve or authorize the same percentage increase or authorize an increase at the same time. It is also possible some states may deny CCC's request for an increase, or require it be reduced or spread over multiple years. In addition, impacted certificate holders have different premium due dates and have different premium billing mechanisms. Premium increases will be staggered in accordance with the timing of regulatory approvals or authorizations and method of premium payment.

43.     As stated in the letter, the premium increases vary greatly from state to state. For example, for insureds in the same premium class and risk pool under the same policy form who reside in Washington, D.C., Continental sought only a 10% increase to take effect on September 1, 2016. In Washington state however CNA sought a 95.5% increase, but only a 25% increase was approved by the State of Washington's insurance department. In Connecticut, CNA sought a 95.5% increase but the Connecticut insurance department approved just a 15% increase, which took effect on October 1, 2016. The rate increases sought by Continental, and the rate increases that were ultimately approved by the various state regulators, are not uniform.

44.     Plaintiff and the Class have been subjected to disparate increases in the cost of their long-term care premiums depending upon the state that they live in. In 2017, Continental stated in publicly filed documents that the average annual premium was $931 nationwide and $1,026 in Washington, D.C. for the policy forms at issue. While the last 10% increase sought in Washington, D.C. would bring the local average to $1,129, the 95% increase sought in Washington and other states would bring the nationwide average premium to $1,820.11.

45.     These disparate increases violate the terms of the Policy because Continental has not met its duty to increase premiums "based on [the insured's] premium class."

46.     These disparate increases violate the terms of the Policy because Continental has not met its duty to increase premiums "for all other insureds in the same premium class." They

also violate the representation that the only increases that could occur would be where they apply to all other policyholders with the same type of coverage and of the same age.

47.     Further, these disparate increases render Continental's marketing brochure and other marketing materials unfair, deceptive, and misleading because Continental has not applied the same premium increase to "everyone in your age group."

48.     As a result, insureds living in different states bear a disproportionate cost of long-term care coverage, in effect subsidizing the premiums and risks of other insureds in contravention of Continental's policy and marketing materials. Further, because insurance regulations generally limit insurers to collecting administrative costs and a reasonable profit, the disparate premium increases introduce a systemic imbalance under which Continental will be forced to recoup expenses associated with some insureds at the expense of others, even if future premiums facially comply with any applicable regulatory requirements and the Policy.

49.     As an established insurance company with significant experience in the industry, Continental knew at the time that it issued the Policy and distributed its marketing documents, including the brochure, that premium increases would and could only be made state-by-state and not for the entire premium class or age group. Yet Continental misstated the basis upon which future premium increases would occur and concealed its intention to vary the timing and amount of premium increases for subsets of each premium class or age group, state by state. In fact, while Continental enrolled insureds under the group policies at issue here without any state class limitations on premium increases, Continental was offering individual long-term care insurance coverage *that expressly stated premium increases would be effectuated on a state by state class basis*. For example, one policy states, "However, We may change the premium rates. Any change will apply to all policies in the same class as Yours *in the state where the policy was*

- 14 -

*issued*." (Form P1-15203-A48, issued in Wisconsin with an effective date of June 3, 1994 (emphasis added)). Thus Continental knew precisely how to limit a premium increase class to a certain state, but it chose not to do that with respect to the Policy. Continental's attempt to add language into its Policy post-hoc should be rejected.

**C.  Continental promises inflation protection, but misleads its insureds about the nature of that protection and future premium increases.**

50.  Like many other insureds, Sieving purchased an expensive inflation rider for protection against the rising costs of long-term care. But instead of protecting him, this rider left him exposed as Continental almost doubled its premiums to keep pace with rising healthcare costs.

51.  Like life insurance, long-term care insurance protects individuals against risks that span decades into the future. A buyer of long-term care insurance would naturally be concerned about the possible impact of inflation on the benefits available under the policy, as well as the possible impact of inflation on the cost of coverage. The relationship between the cost of coverage, the policy benefits, and the possibility of inflation is highly material to a reasonable consumer.

52.  For this reason, most state insurance regulations require that long-term care insurance companies make an offer of inflation protection to every prospective purchaser of long-term care insurance.

53.  For example, in Illinois (where Sieving's group policy was delivered), regulations state, "No insurer may offer a long-term care insurance policy unless the insurer also offers to the policyholder in addition to any other inflation protection the option to purchase a policy that provides for benefit levels to increase with benefit maximums or reasonable durations which are

meaningful to account for reasonably anticipated increases in the costs of long-term care services covered by the policy." Ill. Admin. Code. tit. 50 § 2012.80(a).

54.     The regulations require the insurer to offer options including an automatic annual increase of benefit levels compounded annually at a rate of at least 5%. Ill. Admin. Code. tit. 50 § 2012.80(a)(1).

55.     Premiums charged for an inflation-protected policy with an automatic benefit increase option are generally much higher than premiums charged for an unprotected policy. In Sieving's case, Continental's base rate schedule for long-term care insurance for Sieving's age group with the same level of coverage, at the time of his purchase, listed a monthly premium of $50.73. That same plan with inflation protection and the automatic benefit increase option, listed a monthly premium of $110.80. Sieving selected the maximum coverage, which included the additional cost of a benefit account of $13.68, for a total premium of $124.48. Even excluding the cost of the benefit account option, Sieving's premium was more than double the base policy because he purchased inflation protection with the automatic benefit increase option.

56.     Consumers purchasing inflation protection at such a high premium—here, 218% of the standard premium—reasonably expect that they are purchasing long-term stability in order to avoid the need for future premium increases, purchases of additional coverage, or out-of-pocket costs for services in the future as the costs of long-term care rise. An automatic increase of benefits year-to-year is cold comfort to an insured if premiums are subject to rise along with the costs of care.

57.     Put differently, a reasonable insured would think twice about paying more than double the base premium for an increased daily benefit accruing slowly over a period of years if the insured will be subject to additional premium increases to cover the cost of inflation that was

supposed to be rolled into the higher original premium. Raising premiums to cover the rising

costs of long-term care is the exact opposite of inflation protection.

58.    In short, premium stability is of the utmost importance to any purchaser of

inflation protection on long-term care insurance.

59.    Because of the obvious potential for confusion or deception over the nature of

inflation protection, regulations require clear and specific disclosures regarding possible

premium increases on inflation-protected policies.

60.    Illinois has adopted the model regulation that applies in many states, providing as

follows:

> d) Insurers shall include the following information in the outline of coverage:
>
>> 1) A graphic comparison of the benefit levels of a policy that increases benefits over the policy period with a policy that does not increase benefits. The graphic comparison shall show benefit levels over at least a 20 year period.
>>
>> 2) Any expected premium increases or additional premiums to pay for automatic or optional benefit increases.

Ill. Admin. Code. tit. 50 § 2012.80(d).

61.    Further, the regulation requires assurances and disclosures of stable premiums

with the offer of inflation protection: "An offer of inflation protection which provides for

automatic benefit increases **shall include an offer of a premium which the insurer expects to

remain constant."** Ill. Admin. Code. tit. 50 § 2012.80(f) (emphasis added).

62.    Additionally, the regulation requires the insurer to "**disclose in a conspicuous

manner that the premium may change in the future unless the premium is guaranteed to

remain constant**." Ill. Admin. Code. tit. 50 § 2012.80(f) (emphasis added).

63.     Sieving's long-term care policy states: "If a provision conflicts with the statutes of the jurisdiction in which the Policy was delivered or issued, it is automatically changed to meet the minimum requirements of the statute." Thus, when an insurer fails to disclose in a conspicuous manner that the increased premium paid for an automatic benefit increase may change in the future as required by Ill. Admin. Code. tit. 50 § 2012.80(f), the policy is deemed to guarantee that the premium remains constant to meet the requirements of the regulation.

64.     Continental failed to disclose in a conspicuous manner that the increased premium paid for an automatic benefit increase may change in the future. Indeed, Continental's marketing materials state the opposite.

65.     The Continental brochure contained a prominent section entitled, "Select The Type of Inflation Protection You Want Against the Rising Costs of Care." This section explained two primary options available to insureds to protect against inflation risk.

66.     The first inflation-protection option is the Future Purchase Option feature, which is included with the base-level policy. This feature offers insureds:

> the highest possible benefit today with many opportunities to increase your coverage later, if you wish, without proof of insurability. Every three years you will be given the opportunity to increase your daily and lifetime benefits. You will automatically be approved for the increase while you are actively at work. When you are no longer an active employee, you will only need to show evidence of good health to add coverage if you have declined the previous offer. The cost of each increase will be based on your age at the time of the increase.

67.     As an alternative to this pay-as-you-go inflation protection, Continental offered the Automatic Benefit Increase Option. This offer requires a much higher premium to start out, but promises long-term protection in the form of an automatic annual increase of the maximum daily benefit by 5%. The Continental brochure states as follows:

> For an additional fixed premium, this allows your benefits to increase automatically every year. If you choose this option, your daily Nursing Home and Community Based Care Benefits and your Lifetime Maximum Benefit Amount

will all increase by 5% per year, compounded annually for as long as you are insured, with no corresponding annual increase in premium and without further proof of insurability, even while you are drawing benefits. For example, if you choose the $100 per day benefit with the Automatic Benefit Increase Option, after 20 years your daily benefit will have grown to over $252 per day, after 40 years it will be over $670 per day, and it will still be growing (see the chart on page 8). The magic of compounding works on this increase just like it does on your savings and investment accounts.

68.      Nowhere in this offer of an automatic benefit increase does Continental state, let alone conspicuously state, that premiums may increase even after this form of inflation protection is purchased. To the contrary, Continental states that upon purchasing the automatic benefit increase, you will have "no corresponding annual increase in premium," and touts a "level, easy to budget premium":

## AUTOMATIC BENEFIT INCREASE OPTION (ABI)

### Pros
- Level, easy to budget premium
- Benefits go up every year without corresponding premium increases
- Daily and lifetime benefit amounts increase even if you are on claim

### Cons
- Costs more initially than FPO
- May not track actual inflation trends as well as FPO

69.      Regarding the Lifetime Compounded Automatic Benefit Increase, Continental's Outline of Coverage states, "On each anniversary of the Insured's Effective Date, We will increase by the Automatic Benefit Increase Percentage stated in the Schedule each benefit

amount then in effect." Nowhere in the outline of coverage does Continental state, let alone conspicuously state, that premiums may increase even after inflation protection is purchased.

70.     Regarding the Lifetime Compounded Automatic Benefit Increase, the Policy and certificate state, "On each anniversary of this benefit's effective date, all benefit amounts in effect on that anniversary and the remaining Lifetime Maximum Benefit will increase by 5%." Nowhere in the master policy or certificate does Continental state, let alone conspicuously state, that premiums may increase even after inflation protection is purchased.

71.     As noted above, Sieving purchased inflation protection under the Policy in the form of the Lifetime Compounded Automatic Benefit Increase. This inflation-protection benefit increases the maximum daily benefit by 5% per year. The selection of this benefit also resulted in Sieving agreeing to pay a premium at approximately 218% the level he otherwise would have paid.

72.     Sieving and any other consumer would reasonably understand and expect from the language in the brochure, outline of coverage, and policy that future increases in premiums and purchases of additional coverage would not take place if the automatic benefit increase option for inflation protection is purchased. Sieving and any other consumer would reasonably understand and expect that by paying more than double for inflation protection in the form of benefit increases, premiums would be expected to remain stable even if the costs of long-term care increased in future years.

73.     Instead of charging a "level premium" to purchasers of the automatic benefit increase feature, Continental has raised their premiums by astronomical amounts, in Sieving's case nearly doubling the original premium for the policy. Even though Sieving already agreed to pay more than twice the base premium for the policy for inflation protection, Continental has

seen fit to double premiums again many years after the policy was purchased. This is despite the

National Association of Insurance Commissioners' Model Long-Term Care Insurance

Regulations that note, "The term 'level premium' may only be used when the insurer does not

have the right to change the premium."

74.     In more concrete terms, Sieving paid more than double for coverage that would

increase by 5% each year. Seventeen years after the purchase, now that the benefit level has

doubled, Continental has doubled the cost of coverage again. By increasing premiums in this

way, Continental protects itself from inflation, not Sieving.

75.     As Continental explained in a recent state application for a premium increase, its

assumptions for current actuarial projections "are substantially different from those used in the

original product pricing. . . . The original pricing assumptions for claim costs, voluntary

termination rates, mortality, and interest varied over time." In other words, Continental falsified

or erred in its projections of long-term care costs and interest rates.

76.     Nonetheless, Continental now seeks to inflict the cost of its false projections upon

its insureds, even those insureds who thought they were paying substantially more in order to

protect themselves from upward trends in the cost of long-term care. Continental's marketing

materials, outline of coverage, and Policy are materially misleading because they fail to disclose

to the insured that the automatic benefit increase affords no protection against future premium

increases. Moreover, Continental has failed to disclose in the offer of automatic benefit increases

that premium levels are not guaranteed. Therefore, a contractually guaranteed premium, a true

"level premium," arises in the policy by operation of law.

77.     Continental has breached the policy by seeking to raise premiums on policies

where the automatic benefit increase option was purchased. Continental has further committed

fraud and violated consumer deception statutes by misrepresenting the nature of inflation

protection and failing to disclose that such protection did not protect insureds against

astronomical premium increases in the future.

## VI.    CLASS ACTION ALLEGATIONS

78.    This action is brought and may properly be maintained as a class action, as it

satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority

requirements of Federal Rule of Civil Procedure 23. Plaintiff brings all claims herein

individually and as a class action under Federal Rule of Civil Procedure 23.

79.    Plaintiff seeks to represent the following two classes:

(1) The Nationwide Group Class: All individuals who purchased or
are insured under a Continental Casualty Company group policy
for long-term care coverage delivered in Illinois, whose group
policy either states or was marketed using material that states that
premiums will not increase unless they also increase for all other
insureds or all other insureds in a premium class, age category, or
other specified category.

(2) The Inflation Protection Class: All individuals who purchased
or are insured under a Continental Casualty Company group policy
for long-term care coverage delivered in Illinois, whose group
policy certificate includes an automatic annual benefit increase.

80.    While the exact number of members in each Class cannot be determined, each

Class consists of at least thousands of persons nationwide. The members of these two Classes are

therefore so numerous that joinder of all members is impracticable. The exact number of Class

Members can readily be determined by documents produced by Continental.

81.    There are questions of fact and law common to the Classes, including:

i.      Whether Continental increased long-term care premiums state by state;

ii.     Whether Continental increased premiums on policies with an automatic
annual benefit increase feature;

iii.     Whether Continental misrepresented the terms of its long-term care policies;

iv.     Whether Continental misrepresented its intent to raise premiums state by state;

v.     Whether Continental misrepresented its intent to raise premiums on policies with an automatic annual benefit increase feature;

vi.     Whether, through each of the foregoing practices, Continental breached its contracts with its insureds;

vii.     Whether, through each of the foregoing practices, Continental violated the Illinois Consumer Fraud and Deceptive Practices Act (815 Ill. Comp. Stat. Ann. 505, *et seq.*);

viii.     Whether, through each of the foregoing practices, Continental fraudulently misrepresented its long-term care coverage while marketing and selling it;

ix.     Whether, through each of the foregoing practices, Continental fraudulently concealed facts in the marketing and sale of long-term care coverage;

x.     Whether Continental's actions were unreasonable, frivolous, or unfounded;

xi.     Whether Continental's actions were reckless, malicious, or willful;

xii.     Whether Plaintiff and members of the Classes are entitled to rescission;

xiii.     Whether Plaintiff and members of the Classes may have their premiums returned;

xiv.     Whether Plaintiff and members of the Classes are entitled to disgorgement of ill-gotten gains;

xv.     Whether Plaintiff and members of the Classes are entitled to an award of compensatory damages;

xvi.     Whether Plaintiff and the Class are entitled to an award of statutory damages;

xvii.     Whether Plaintiff and members of the Classes are entitled to an award of punitive damages;

xviii.     Whether Plaintiff and members of the Classes are entitled to an award of attorney's fees; and

xix.     Whether Plaintiff and members of the Classes are entitled to declaratory and injunctive relief.

82.     Plaintiff has the same interests in this matter as all other members of the Classes, and his claims are typical of all members of the Classes. Plaintiff's claims are coincident with and not antagonistic to those of other members of the Classes that Plaintiff seeks to represent. Plaintiff and all members of the Classes have sustained damages arising out of Continental's common course of conduct as outlined herein. The damages of each member of the Classes were caused by Continental's wrongful conduct.

83.     Plaintiff is committed to pursuing this action and has retained competent class counsel experienced in insurance litigation and class action litigation. Plaintiff will fairly and adequately represent the interests of the other members of the Classes.

84.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(2) because Continental's actions generally apply to the Classes as a whole, and Plaintiff seeks, *inter alia*, equitable remedies regarding the Classes as a whole.

85.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because the common questions of law and fact enumerated above predominate over questions affecting only individual members of the Classes, and a class action is the superior method for fair and efficient adjudication of the controversy. The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. Plaintiff's counsel, highly experienced in insurance litigation and class action litigation, foresees little difficulty in the management of this case as a class action.

86.     The laws of Illinois govern the claims of the entire Classes. Continental group long-term care policies delivered in Illinois are governed by the laws of Illinois irrespective of the individual insured's state of residence.

## VII.   CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## (BREACH OF CONTRACT)

87.     Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

88.     The Policy (long-term care policy number 9774) issued by Continental constitutes a contract between Continental and Plaintiff.

89.     Under the express terms of the Policy, Continental agreed that it could not change the insured's premiums because of age or health.

90.     Under the express terms of the Policy, Continental agreed that while it could "change the Insured's premiums based on his or her premium class," it could do so "only if We change the premiums for all other Insureds in the same premium class."

91.     Continental's insurance policies are standardized documents, and the same terms govern Continental's long-term care policies with the Nationwide Group Class.

92.     Continental breached its contracts with Plaintiff and the Nationwide Group Class by increasing premiums without increasing the premiums for all other Insureds in the same premium class. Continental increased the premiums under the Policy in different states at different times, and in different amounts, in violation of the policy language prohibiting increases that are not uniform across the premium class.

93.     Continental's brochure, outline of coverage, and policy further create an enforceable expectation that future increases in premiums and purchases of additional coverage would not take place if the automatic benefit increase option for inflation protection is purchased. Further, a guaranteed level premium arises in the policy by operation of law because Continental failed to "disclose in a conspicuous manner that the premium may change in the

- 25 -

future unless the premium is guaranteed to remain constant." Ill. Admin. Code. tit. 50 § 2012.80(f).

94.     Continental breached its contracts with Plaintiff and the Inflation Protection Class by increasing premiums even though the automatic benefit increase option for inflation protection was purchased.

95.     Because of Continental's breaches, Plaintiff and the Classes paid increased premiums that they would not have had to pay had Continental followed the policy. Plaintiff and the Classes have been damaged and will continue to be damaged.

## SECOND CAUSE OF ACTION

## (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

96.     Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

97.     As an enforceable contract, the Policy (long-term care policy number 9774) issued by Continental includes an implied covenant of good faith and fair dealing, such that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

98.     Under the express terms of the Policy, Continental agreed that it could not change the insured's premiums because of age or health.

99.     Under the express terms of the Policy, Continental agreed that while it could "change the Insured's premiums based on his or her premium class," it could do so "only if We change the premiums for all other Insureds in the same premium class."

100.    Continental's insurance policies are standardized documents, and the same terms govern Continental's long-term care policies with the two Classes.

101.    Continental's brochure, outline of coverage, and policy further create an enforceable expectation that future increases in premiums and purchases of additional coverage would not take place if the automatic benefit increase option for inflation protection is purchased. Future premium increases substantially impair or defeat the purpose of an automatic benefit increase feature of the policy. Further, the implied covenant of good faith and fair dealing requires a level premium because Continental failed to "disclose in a conspicuous manner that the premium may change in the future unless the premium is guaranteed to remain constant." Ill. Admin. Code. tit. 50 § 2012.80(f).

102.    Continental breached the implied covenant of good faith and fair dealing with Plaintiff and the Nationwide Group Class by increasing premiums under the Policy in different states at different times, and in different amounts. Continental also breached the implied covenant of good faith and fair dealing with Plaintiff and the Inflation Protection Class by increasing premiums under the Policy despite the purchase of an automatic benefit increase feature. By so doing, Continental increased the premiums unreasonably and with an improper motive, arbitrarily, capriciously, and in a manner inconsistent with the reasonable expectations of the parties. These premium increases deprived Plaintiff and members of the Classes of the fruits of the contract.

103.    Because of Continental's breach, Plaintiff and members of the Classes paid increased premiums that they would not have had to pay had Continental followed the policy. Plaintiff and members of the Classes have been damaged and will continue to be damaged.

**THIRD CAUSE OF ACTION**

**(VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE PRACTICES ACT, 815 ILL. COMP. STAT. ANN. 505, *et seq.*)**

104.     Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

105.     Continental is a "person" under 815 Ill. Comp. Stat. Ann. 505/1(c).

106.     Plaintiff is a "consumer" as defined by 815 Ill. Comp. Stat. Ann. 505/1(e), who purchased a policy certificate issued under the Policy.

107.     The Policy is "merchandise" under 815 Ill. Comp. Stat. Ann. 505/1(b).

108.     Continental violated the Illinois Consumer Fraud and Deceptive Practices Act, 815 Ill. Comp. Stat. Ann. 505, *et seq.*, through its unfair and deceptive practices in marketing and selling long-term care policies to Plaintiff and the Classes, including (1) representing that long-term care insurance policies have characteristics, uses, benefits, and qualities which they do not have, (2) representing that long-term care insurance policies are of a particular standard, quality, and grade when they are not, (3) advertising long-term care insurance policies with the intent not to sell them as advertised, (4) representing that a transaction involving long-term care insurance policies confers rights, remedies, and obligations which it does not, (5) representing that the subject of a transaction involving long-term care insurance policies has been supplied in accordance with a previous representation when it has not, and (6) misrepresenting a material fact which has a tendency to mislead.

109.     Continental's brochure and other marketing materials contained deceptive statements about future premium increases. For example, the Group Long-Term Care Program brochure for the Employee Trust states: "The younger you are when your coverage begins, the lower your premiums will be for the duration of your participation in the plan. That's because

once you're in the plan, your rates don't increase just because you get older. So it makes sense to buy coverage now when you can set your premiums at the lowest possible rate." The brochure further promises: "Your premium is based on your age on your application date. Your premium will not increase because you grow older. It will remain the same unless the rates are increased for everyone in your age group." The same brochure also states that when the automatic benefit increase inflation protection features is purchased, "your Lifetime Maximum Benefit Amount will all increase by 5% per year, compounded annually for as long as you are insured, with no corresponding annual increase in premium." The brochure also promised that purchasing inflation protection would result in a "level, easy-to-budget premium."

110.    Long-term care premium increases are frequently subject to oversight by state insurance commissioners, and the timing and amount of premium increases generally vary from state to state depending on the actions of a given state's insurance commissioner. Continental knew that it planned to increase premiums in amounts that varied from one state to the next, depending upon the regulatory environment in each state.

111.    Continental further knew that it planned to increase premiums for purchasers of the automatic benefit increase option, even though it failed to disclose that premiums could increase despite the purchase of that option.

112.    The foregoing representations were deceptive, false, and misleading because when they were made, Continental knew that it would not uniformly increase premiums for everyone in a given age group but would raise premiums at different intervals and in different amounts from one state to the next. Plaintiff and members of the Classes could be forced to bear (and did bear) a greater cost of premiums than they should have because the amount of their premiums exceeded premiums charged to members of the same age group in other states, forcing

them to bear a greater share of the cost of the policy than members of the same age group in other states.

113.    The foregoing representations were deceptive, false, and misleading because when they were made, Continental knew that it might or would raise premiums for purchasers of the automatic benefit increase option. Rather than receiving protection against inflation in exchange for paying more than double for the coverage as represented, purchasers of the automatic benefit increase now bear the cost of inflation as Continental substantially increased their premiums again.

114.    Continental made the foregoing deceptive representation in the conduct of trade or commerce.

115.    Continental's actions affect the public interest because Plaintiff was injured in exactly the same way as thousands of others purchasing Continental long-term care insurance policies as a result of Continental's generalized course of deception. All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Continental's business.

116.    Plaintiff and the Classes suffered ascertainable loss as a result of Defendant's deceptive conduct. Plaintiff overpaid for his long-term care insurance certificate and did not receive the benefit of the bargain. Continental's conduct proximately caused the injuries to Plaintiff and the Classes. Because of Continental's deceptive conduct, Plaintiff and the Classes have suffered injury and will suffer injury in the future in the form of premium increases which should not have been sought.

117.    Continental intended that the foregoing deceptive representation be relied upon by purchasers of its long-term care insurance policies. Plaintiff and the Classes were exposed to and relied upon the foregoing deceptive representations while purchasing long-term care coverage

from Continental. Plaintiff and the Classes would not have purchased Continental's long-term

care coverage had they known that premium increases would vary state by state, or that

premiums would increase despite the purchase of inflation protection.

## FOURTH CAUSE OF ACTION

## (FRAUD)

118.    Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth

herein.

119.    Continental's brochure and other marketing materials contained deceptive

statements about future premium increases. For example, the Group Long-Term Care Program

brochure for the Employee Trust states: "Your premium is based on your age on your application

date. Your premium will not increase because you grow older. It will remain the same unless the

rates are increased for everyone in your age group." The same brochure also states that when the

automatic benefit increase inflation protection features is purchased, "your Lifetime Maximum

Benefit Amount will all increase by 5% per year, compounded annually for as long as you are

insured, with no corresponding annual increase in premium."

120.    Long-term care premium increases are frequently subject to oversight by state

insurance commissioners, and the timing and amount of premium increases generally varies from

state to state depending on the actions of a given state's insurance commissioner. Continental

knew that it planned to increase premiums in amounts that varied from one state to the next,

depending upon the regulatory environment in each state.

121.    Continental further knew that it planned to increase premiums for purchasers of

the automatic benefit increase option, even though it failed to disclose that premiums could

increase despite the purchase of that option.

122. The foregoing representations were deceptive, false, and misleading because at the time that they were made, Continental knew that it would not uniformly increase premiums for everyone in a given age group but would raise premiums at different intervals and in different amounts from one state to the next. As a result, Plaintiff and the Nationwide Group Class could be forced to bear (and did bear) a greater cost of premiums than they should have because the amount of their premiums exceeded premiums charged to members of the same age group in other states, forcing them to bear a greater share of the cost of the policy than members of the same age group in other states.

123. The foregoing representations were deceptive, false, and misleading because when they were made, Continental knew that it might or would raise premiums for purchasers of the automatic benefit increase option. Rather than receiving protection against inflation in exchange for paying more than double for coverage as represented, purchasers of the automatic benefit increase now bear the cost of inflation as Continental substantially increased their premiums again.

124. Continental intended that the foregoing deceptive representation be relied upon by purchasers of its long-term care insurance policies. Plaintiff and the Classes were exposed to and relied upon the foregoing deceptive representations while purchasing long-term care coverage from Continental. Plaintiff and the Classes would not have purchased Continental's long-term care coverage had they known that premium increases would vary state by state, or that premiums would increase despite the purchase of inflation protection. The nature and amount of premium increases for long-term care coverage are facts highly material to Plaintiff and the Classes because such coverage is purchased to provide long-term financial stability.

125.    Because of Continental's false, deceptive, and misleading representation, Plaintiff and the Classes have suffered injury and will suffer injury in the future in the form of an insurance product which was materially different from what was promised and premium increases that should not have occurred.

## FIFTH CAUSE OF ACTION

## (FRAUDULENT CONCEALMENT)

126.    Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

127.    Continental's brochure and other marketing materials failed to disclose that future premium increases would not be uniform across an age group but would vary from one state to the next. The Group Long-Term Care Program brochure for the Employee Trust states: "Your premium is based on your age on your application date. Your premium will not increase because you grow older. It will remain the same *unless the rates are increased for everyone in your age group*." (Emphasis added.)

128.    Continental's brochure and other marketing materials failed to disclose that purchasers of the automatic benefit increase option would be subject to future premium increases. The brochure states that when the automatic benefit increase inflation protection features is purchased, "your Lifetime Maximum Benefit Amount will all increase by 5% per year, compounded annually for as long as you are insured, *with no corresponding annual increase in premium . . . .*" (Emphasis added.)

129.    As Continental well knew, long-term care premium increases are frequently subject to oversight by state insurance commissioners, and the timing and amount of premium increases generally varies from state to state depending on the actions of a given state's

insurance commissioner. Continental knew that it planned to increase premiums in amounts that varied from one state to the next, depending upon the regulatory environment in each state.

130. Continental further knew that it planned to increase premiums for purchasers of the automatic benefit increase option, even though it failed to disclose that premiums could increase despite the purchase of that option.

131. Continental's failure to disclose its intention to seek premium increases that varied in timing and amount from state to state, rather than uniform increases across the age group, constituted a fraudulent omission. As a result, Plaintiff and the Nationwide Group Class could be forced to bear (and did bear) a greater cost of premiums than they should have because the amount of their premiums exceeded premiums charged to members of the same age group in other states, forcing them to bear a greater share of the cost of the policy than members of the same age group in other states.

132. By omitting this information, Continental intended to induce a false belief in Plaintiff and the Nationwide Group Class that premium increases would be uniform in timing and amount across a given age group. The nature and amount of premium increases for long-term care coverage are facts highly material to Plaintiff and the Nationwide Group Class because such coverage is purchased to provide long-term financial stability.

133. Continental's failure to disclose that it might or would raise premiums for purchasers of the automatic benefit increase inflation protection option constituted a fraudulent omission. Rather than receiving protection against inflation in exchange for paying more than double for coverage as represented, purchasers of the automatic benefit increase now bear the cost of inflation as Continental substantially increased their premiums.

134. By omitting this information, Continental intended to induce a false belief in Plaintiff and the Inflation Protection Class that purchasing the automatic benefit increase inflation protection feature would protect them against future premium increases. The nature and amount of premium increases for long-term care coverage are facts highly material to Plaintiff and the Inflation Protection Class because such coverage is purchased to provide long-term financial stability.

135. Plaintiff and the Nationwide Group Class would not have purchased Continental's long-term care coverage had they known that premium increases would vary state by state. Plaintiff and the Inflation Protection Class would not have purchased Continental's long-term care coverage had they known that premium increases were possible even if they purchased inflation protection in the form of an automatic benefit increase feature.

136. Because of Continental's fraudulent omission, Plaintiff and the two Classes have suffered injury and will suffer injury in the future in the form of an insurance product that was materially different from what was promised and premium increases that should not have occurred.

**SIXTH CAUSE OF ACTION**

**(DECLARATORY AND INJUNCTIVE RELIEF)**

137. Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

138. Plaintiff brings this cause of action for himself and the two Classes pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 seeking a declaration that, for those who maintain long-term care insurance with Continental, it is a violation of Illinois law and the insurance contract for Continental to increase premiums in amounts that vary state-by-state rather than for the entire premium class or age group. Plaintiff further seeks a declaration that it

is a violation of Illinois law and the insurance contract for Continental to increase premiums on policies that bear an automatic benefit increase feature.

139.     This Court has the power to declare the rights of said Continental policyholders and those who would be insured under such policies and who may suffer similar losses in the future.

140.     Plaintiff, for himself and on behalf of the two Classes, seeks a declaration of his rights under the Continental policy, and seeks a declaration of the rights and liabilities of the parties herein.

141.     Absent judicial intervention, Continental will seek to increase premiums in amounts that vary state-by-state rather than for the entire premium class or age group, and Continental will seek to increase premiums for policies bearing an automatic benefit increase feature. In respect of Continental's continuing unlawful practices, Plaintiff has no plain, speedy, or adequate remedy at law, the interests of the parties favor an injunction, and an injunction is in the public interest. Plaintiff therefore seeks an order permanently enjoining Continental from increasing long-term care insurance premiums by amounts that vary state-to-state or for any subgroup of insureds other than premium class or age group. Plaintiff further seeks an order permanently enjoining Continental from increasing long-term care insurance premiums for policies bearing an automatic benefit increase feature.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following judgment:

A.     An Order certifying this action as a class action, including certifying each cause of action under the appropriate subsection of Fed. R. Civ. P. 23;

B.     An Order appointing Plaintiff as class representative and appointing the undersigned counsel to represent the two Classes;

C.      Rescission and return of all premiums paid;

D.      Disgorgement of ill-gotten gains;

E.      Declaratory and injunctive relief, including an injunction requiring Continental to cease and desist from increasing premiums in amounts that vary state-to-state or for any subgroup of insureds other than premium class or age group and an injunction requiring Continental to cease and desist from increasing premiums on policies bearing an automatic benefit increase feature;

F.      In the alternative, compensatory, statutory, and punitive damages;

G.      An award of attorney's fees and costs, as provided by law and/or as would be reasonable from any monies recovered for or benefits bestowed upon the Classes; and

H.      Such other and further relief as this Court may deem just, equitable, or proper.

## JURY TRIAL DEMAND

Plaintiff respectfully requests a jury trial for all matters so triable.

DATED: August 31, 2020                          Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By: */s/ Steve W. Berman*
　　　 Steve W. Berman
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
T: (708) 628-4949
F: (708) 628-4950
steve@hbsslaw.com

Robert B. Carey (*pro hac vice to be filed*)
John M. DeStefano (*pro hac vice to be filed*)
HAGENS BERMAN SOBOL SHAPIRO LLP
11 West Jefferson Street, Suite 1000
Phoenix, AZ 85003
Telephone: (602) 840-5900
rob@hbsslaw.com
johnd@hbsslaw.com

Jeffrey S. Goldenberg
GOLDENBERG SCHNEIDER, LPA
4445 Lake Forest Drive, Suite 490
Cincinnati, OH 45242
Telephone: (513) 345-8291
Facsimile: (513) 345-8294
jgoldenberg@gs-legal.com

Sean K. Collins (pro hac to be filed)
LAW OFFICES OF SEAN K. COLLINS
184 High Street, Suite 503
Boston, MA 02110
Telephone: (855) 693-9256
Facsimile: (617) 227-2843
sean@neinsurancelaw.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and accurate copy of the foregoing was filed electronically via the Court's CM/ECF system, on August 31, 2020. Notice of electronic filing will be sent to all parties by operation of the Court's electronic filing system.

DATED: August 31, 2020                  _/s/ *Steve Berman*_____
                                                     Steve Berman